In re Viola Carolyn **LUCAS, Debtor.**

**Orvey R. Cousatte, Administrator of the Estate of Imogene Collier, Plaintiff,**

v.

**Viola Carolyn Lucas a/k/a Carolyn Lucas, Defendant.**

**Bankruptcy No. 01–12092.**
**Adversary No. 01–5116.**

United States Bankruptcy Court, D. Kansas.

March 2, 2004.

Russell W. Davisson, Wichita, KS, for Debtor.

D. Michael Case, Wichita, KS, trustee.

## MEMORANDUM OPINION ON REMAND

ROBERT E. NUGENT, Chief Judge.

This adversary proceeding is before the Court following remand by the United States Bankruptcy Appellate Panel for the Tenth Circuit ("BAP").[1] The BAP affirmed this Court's prior conclusion[2] that a state court judgment of undue influence against Viola Carolyn Lucas ("Lucas") and in favor of Orvey R. Cousatte ("Cousatte"), as administrator of the estate of Imogene Collier, was not excepted from her discharge under either 11 U.S.C. § 523(a)(4) or (a)(6).[3] The BAP remanded for further consideration, Cousatte's request for the imposition of a constructive trust upon assets acquired by Lucas with the proceeds of Collier's estate. Upon receipt of the BAP mandate, this Court afforded the parties an opportunity to brief this remaining issue and both sides have submitted papers in support of their respective positions.[4] The remaining issue for determination here is whether this Court should declare that the property (*i.e.* a house and a car) acquired by Lucas with assets and proceeds of Collier's estate is held by Lucas in constructive trust for Collier's heirs at law.

In remanding to this Court for further proceedings, the BAP stated:

---

1. Dkt. 40. *See also, Cousatte v. Lucas (In re Lucas)*, 300 B.R. 526 (10th Cir. BAP 2003).

2. Dkt. 26. Memorandum Opinion filed December 5, 2002.

3. Unless otherwise noted, all subsequent statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq.

4. Neither party requested a hearing to present any additional evidence to the Court. Thus, the record before this Court consists of the exhibits admitted into evidence and the testimony presented at the trial of this adversary on August 27, 2002.

When the bankruptcy court determined that it did not need to address the issue of whether a constructive trust had been imposed because the debt was dischargeable, it appears to have summarily determined by implication that there was no constructive trust. This was in error. We observe that the issue of whether state law has imposed a prepetition constructive trust is one that would not ordinarily arise in a nondischargeability proceeding because such a proceeding presumes that there is a debt that may or may not be discharged. However, once this issue has been raised, a bankruptcy court cannot summarily dismiss it on the grounds that the debt is dischargeable. *Accordingly, we remand so that the bankruptcy court may either resolve the constructive trust issue with further findings, or, if it determines that the issue is not properly before it, dismiss it without prejudice.*[5]

A brief summary of the facts and procedural history of the parties' dispute is as follows.[6] Imogene Collier ("Collier") was an elderly neighbor of Lucas. In 1996, after Collier was widowed, Lucas befriended her and, thereafter, undertook to assist her in various matters. This assistance included consultation with Collier about her financial affairs and estate and culminated in Collier's execution of the Imogene Collier Revocable Trust (the "Trust") on October 10, 1996. Collier and Lucas were named co-trustees. Collier also executed a will providing that, at her death, all her assets would become property of the

Trust. Upon Collier's death, Lucas was to receive all of the residue of the Trust after payment of taxes and last expenses. Lucas was named Collier's executrix. Collier transferred all her assets to the Trust and her accounts were maintained jointly with Lucas as co-trustee. When Collier died in February of 1997, Lucas opened an estate proceeding in the Probate Division of the District Court of Sedgwick County, Kansas. Cousatte, Collier's estranged half-brother and only surviving heir at law, filed defenses to the probate proceeding. He also commenced a separate proceeding for letters of administration and, as administrator, he commenced a civil suit in Sedgwick County District Court challenging the validity of the will and Trust (the "Civil Action").[7]

The petition that was filed commencing the Civil Action made no demand that a constructive trust be declared or impressed on the Collier assets or their proceeds.[8] The prayer for relief requested only an accounting and to set aside the transactions between Collier and the Trust. The Civil Action was tried and, in December of 1997, the state court made oral findings of fact and conclusions of law which are a part of this Court's record.[9] The state court ultimately concluded that while some suspicious circumstances existed, there was no reason to believe that Collier lacked testamentary capacity at the time the will and Trust were executed. The state court determined that the suspicious circumstances were immaterial, noting that Collier had expressed an intention

---

**5.** 300 B.R. at 533–534 (emphasis added).

**6.** A more complete recitation is found in this Court's previous Memorandum Opinion (Dkt.26) and in the BAP's published opinion. *See* 300 B.R. at 528–30.

**7.** *Orvey R. Cousatte, Administrator of the Estate of Imogene Collier v. Viola Carolyn Lucas,*

*a/k/a Carolyn Lucas,* Case No. 97 C 806, Sedgwick County District Court.

**8.** *See* Trial Ex. 5.

**9.** *See* Trial Ex. A. The state trial judge's oral ruling was journalized in a Journal Entry of Judgment that concluded no undue influence was exercised upon Collier. *See* Trial Ex. B.

to leave nothing to Cousatte. The state court reasoned that even if Collier was not the subject of undue influence, Cousatte would have received nothing. Nothing in the state court's remarks suggests that it gave any consideration to declaring or imposing a constructive trust.

On the first appeal of the Civil Action, the Kansas Court of Appeals reversed and remanded the Civil Action to the state court with instructions that the trial court consider the "suspicious circumstances" and determine whether the burden of proof to defend the questioned transactions should be shifted to Lucas under Kansas law.[10] The Court of Appeals' mandate was issued January 21, 2000. Without conducting any further hearing on remand, the state court signed and entered a journal entry,[11] drafted by Cousatte's counsel, holding that Lucas failed to rebut a presumption of undue influence and therefore the will and Trust were null and void. The transfers to the Trust were set aside, Collier's property was set over to Cousatte as administrator, and title to Collier's real estate was quieted in Cousatte. Lucas was ordered to turn over the property, or the proceeds thereof, to Cousatte. *No constructive trust was declared or imposed.*[12]

Unfortunately, in the three year hiatus between the 1997 judgment favorable to Lucas and its reversal in 2000, Lucas had liquidated the property, distributing the proceeds to herself as sole beneficiary pursuant to the terms of the Trust. She then used the proceeds to buy herself a car and a house. Lucas filed her bankruptcy case on May 7, 2001 when Cousatte attempted to enforce the judgment, and this adversary proceeding by Cousatte to determine dischargeability of debt followed.

Cousatte first demanded the imposition of a constructive trust in this adversary proceeding.[13] Cousatte asked this Court to impose a constructive trust on the property Lucas acquired with proceeds from the Trust assets. There are several reasons why Cousatte's request cannot be granted.

■ First, Lucas claimed the home and car she bought with estate proceeds as exempt in her bankruptcy. Cousatte did not object to this exemption. By operation of law, whatever interest Lucas may have had in these items is no longer in the

---

10. *See* Trial Ex. C, *Orvey R. Cousatte, Administrator of the Estate of Imogene Collier v. Viola Carolyn Lucas, a/k/a Carolyn Lucas,* No. 80,637, 2000 WL 127660 (Kan.App. Jan.21, 2000) (unpublished). The Court of Appeals concluded that the trial court erred in finding that suspicious circumstances were immaterial because as a prospective heir at law, Cousatte had standing to challenge the will. It remanded the case for application of the undue influence analysis as described in *Logan v. Logan,* 23 Kan.App.2d 920, 937 P.2d 967, *rev. denied* 262 Kan. 962 (1997).

11. *See* Trial Ex. D.

12. Lucas appealed the state court judgment. The Kansas Court of Appeals affirmed in an unpublished opinion issued March 1, 2002. *See* Trial Ex. E.

13. However, until trial, Cousatte never expressly referred to a "constructive trust" as the relief he was seeking. In his amended complaint, Cousatte alleged that he was entitled "to a Lien on said real estate to the extent that funds previously belonging to Imogene Collier, deceased, were used to purchase said property ..." *See* Dkt. 3. Similarly, in the final pretrial conference order, Cousatte requested that he be given "a lien" upon Lucas's homestead and car. *See* Dkt. 14, p. 9. In his trial brief, Cousatte again referred to a lien on the property in the form of a constructive trust. *See* Dkt. 24, p. 10. For purposes of this opinion, the Court will construe Cousatte's request for a lien upon the property as a request for imposition of a constructive trust on the property.

bankruptcy estate.[14] Even if a constructive trust had been imposed on those assets, by operation of law, the property is no longer in the estate and this Court has lost jurisdiction over it.

■■■ Second, there is a final and nonappealable state court judgment ending the Civil Action between Cousatte and Lucas. This judgment, twice reviewed by the Kansas appellate courts, contains no reference to the declaration or imposition of a constructive trust. By asking the bankruptcy court to engraft an additional remedy onto the state court judgment in the Civil Action, Cousatte essentially asks this Court to review and modify the state court's decision. The Court concludes that the *Rooker–Feldman* doctrine [15] precludes a federal court from reviewing matters actually decided by a state court or providing relief that is inextricable intertwined with the state court decision.[16] The constructive trust remedy sought here is "inextricably intertwined" with the state court judgment. Accordingly, this Court is without subject matter jurisdiction to impose the constructive trust sought by Cousatte.

The Court has reviewed the authority relied upon by Cousatte and, in particular, retired Bankruptcy Judge Flannagan's carefully drawn opinion in *Clark v. Wetherill (In re Leitner)*.[17] In *Wetherill*, the debtor Leitner had embezzled funds from Wetherill and bought a house. Wetherill sued in state court, seeking in his petition the imposition of a constructive trust on the house. Wetherill managed to obtain a writ of attachment on the house, but was unable to obtain a judgment before Leit-

ner filed his bankruptcy case. In the bankruptcy case, Wetherill sought, and was granted relief from the stay to conclude the state court litigation. The state judge entered an order granting Wetherill judgment and impressing the house with a constructive trust. While this matter was pending in state court, the bankruptcy trustee sought to avoid the writ of attachment as an avoidable transfer under several theories. The state court journal entry was filed before the bankruptcy court reached the trustee's summary judgment motion on the avoidance claim. Holding that the constructive trust declaration related back to the time of the wrongful transfer, the bankruptcy court denied the trustee's relief.[18] Because the home was subject to a constructive trust which related back to a date before the date of bankruptcy filing, Leitner had only a legal interest in the house. The house never became property of the estate under § 541(d). *Wetherill* is plainly distinct from the present case because here, Cousatte never sought nor received a court order impressing Lucas' property with a constructive trust. *Wetherill* is of no help to Cousatte here.

■■■ Finally, even if this Court were inclined to burnish the work of the state court in the Civil Action, there is an insufficient record upon which to do so. This Court does not have the same evidentiary record as the state court. The only evidence in the record pertaining to the constructive trust issue is the state court's bench ruling, the resulting journal entry, the Kansas Court of Appeals opinion af-

---

14. *See* § 522(b) and (c).

15. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

16. *See State of Missouri ex rel. Nixon v. Audley (In re Audley)*, 275 B.R. 383, 390 (10th Cir. BAP 2002).

17. 236 B.R. 420 (Bankr.D.Kan.1999).

18. *Id.* at 425.

firming the final judgment, and the limited testimony of the debtor. Kansas case law is clear that a constructive trust cannot be imposed absent a finding of fraud on the part of the transferee.[19] While the fraud may be actual or constructive, there must be a showing of a breach of an equitable duty which the law declares to be fraudulent. This Court has already held, and the BAP has affirmed, that Lucas's actions *as detailed by the state court*, while giving rise to a presumption of undue influence, did not amount either to fiduciary fraud as that term is defined under § 523(a)(4) or to willful and malicious injury to the property of another under § 523(a)(6).

Kansas law suggests that undue influence is a species of fraud,[20] yet the definition of undue influence includes "coercion, compulsion and restraint as to destroy the testator's free agency, and by overcoming his power of resistance, obliges or causes him to adopt the will of another rather than exercising his own."[21] Moreover, the influence exerted must directly affect the testamentary or inter vivos act itself.[22] Very little in the state court's decision points to "coercion, compulsion and restraint." Instead, the state court merely found that "suspicious circumstances," which raise a *presumption* of undue influence, were present, shifting to Lucas the burden of proving that she did not coerce or compel Collier, and that Lucas failed to meet that burden.[23] There

may well have been a sufficient record in the Civil Action to justify the state court's imposition of a constructive trust had it been requested there, but the factual record before this Court is far from adequate for that purpose.[24]

The Court observes that a discharge was granted to Lucas on September 24, 2001.[25] With the BAP's mandate affirming this Court's previous holding regarding the dischargeability of her debt to Cousatte, that debt is discharged as well. Section 362(c) states that the stay of an act against property of the estate continues until it is no longer property of the estate. With the passage of the exemption objection deadline, and the failure of any party in interest to object to Lucas's exemption of the house and car, those items have become exempt under § 522(1) and are no longer property of the estate. Therefore, they are no longer protected by the stay or the discharge injunction. While Cousatte is permanently enjoined from taking any action against Lucas in personam, some state law relief may be available in rem.[26] This Court leaves it to the parties to determine whether a constructive trust declaration may still be sought or obtained in state court, either in an original action or in aid of execution of the judgment entered in the Civil Action.

In this case and on these facts, however, Cousatte's request for the imposition of a

---

**19.** *See Kampschroeder v. Kampschroeder,* 20 Kan.App.2d 361, 364, 887 P.2d 1152 (1995).

**20.** *See In re Estate of Hall,* 165 Kan. 465, 470, 195 P.2d 612 (1948).

**21.** *See Heck v. Archer,* 23 Kan.App.2d 57, 62, 927 P.2d 495 (1996).

**22.** *Id.* The Court questions how this element can be satisfied where, in this case, the evidence and findings reflect that Collier never had any intention of leaving anything to Cousatte.

**23.** Trial Ex. 5. *See also, Logan v. Logan,* 23 Kan.App.2d 920, 937 P.2d 967, *rev. denied* 262 Kan. 962 (1997).

**24.** The trial transcript of the Civil Action was not placed before this Court at trial of the adversary proceeding.

**25.** Case No. 01–12092, Dkt. 10.

**26.** This Court expresses no opinion concerning the prospective merits of such an action.

710

constructive trust on this property is DENIED for all of the reasons set forth above. A Judgment on Decision will issue this date.

### JUDGMENT ON DECISION

This adversary proceeding is before the Court following remand by the United States Bankruptcy Appellate Panel for the Tenth Circuit ("BAP")[1] for further consideration of plaintiff's request for the imposition of a constructive trust upon a house and car acquired by the defendant with proceeds of Imogene Collier's estate.

The Court concludes that it has no jurisdiction over the property upon which plaintiff seeks to impose a constructive trust by reason of defendant's claims of exemption and plaintiff's failure to object to these exemptions. The house and car are no longer property of the bankruptcy estate. This Court is also without subject matter jurisdiction to impose a constructive trust because of the *Rooker–Feldman* doctrine. The state court judgment of undue influence entered against defendant did not impose a prepetition constructive trust.

Even if this Court had jurisdiction to declare or impose a constructive trust, the facts and evidentiary record before this Court are insufficient to establish a constructive trust under Kansas law.

Plaintiff's request for the imposition of a constructive trust on defendant's house and car is DENIED.

---

1.  *Cousatte v. Lucas (In re Lucas),* 300 B.R. 526 (10th Cir. BAP 2003).