(136 P.3d 484)
No. 94,150

ORVEY R. COUSATTE Administrator of the Estate of Imogene
Collier, *Appellant,* v. VIOLA CAROLYN LUCAS, *Appellee.*

Opinion filed June 9, 2006.

*Richard V. Foote*, of Richard V. Foote P.A., of Wichita, for appellant.

*Russell W. Davisson*, of Wichita, for appellee.

Before CAPLINGER, P.J., JOHNSON, J., and KNUDSON, S.J.

CAPLINGER, J.: Orvey Cousatte brought this action in the district court seeking imposition of a constructive trust on the home of Viola Caroline Lucas, who was the beneficiary of a trust created by Cousatte's deceased half-sister, Imogene Collier. Cousatte alleged that because Lucas exercised undue influence over Collier in the execution of Collier's trust, and because Lucas' home was purchased with proceeds traceable to assets from that trust, Cousatte was entitled to the imposition of a constructive trust on Lucas' home. The district court denied Cousatte's request.

We hold that Cousatte failed to identify, much less prove, the fraud which is a necessary prerequisite to imposition of a constructive trust. We thus hold that under the circumstances of this case, the district court did not abuse its discretion in denying Cousatte's request for imposition of a constructive trust.

The procedural history of this case is extensive and complex and includes a previous district court action by Cousatte alleging undue influence by Lucas; an appeal to this court of the district court's decision in favor of Lucas; a remand from this court; a decision by the district court following remand in favor of Cousatte; an appeal by Lucas to this court; a decision by this court affirming the district court's decision on remand; a bankruptcy action filed by Lucas; an adversary proceeding filed by Cousatte in that bankruptcy action; an appeal to the appellate bankruptcy court by Cousatte from the decision of the bankruptcy court in the adversary proceeding; a remand by the appellate panel; and, on remand to the bankruptcy court, a finding in favor of Lucas in the adversary proceeding in bankruptcy.

As will be seen, this procedural history is relevant to a determination of the issues in this appeal. Thus, we have set that history forth below in some detail.

*Factual and procedural background*

Imogene Collier spent most of her adult life living with her husband, Glenn Collier, and Imogene's unmarried sister, Norma Lee Cousatte. Imogene was characterized as "slow," could not drive a

car, and essentially was cared for by Glenn and Norma Lee. After Glenn's death in 1994, Norma Lee took over Imogene's care.

When Norma Lee died in July 1996, Imogene's condition deteriorated rapidly. Imogene's neighbor, Viola Carolyn Lucas, cared for Imogene by driving her to the grocery store, helping her shop, writing checks, and taking her to appointments.

During this time period, Imogene added Lucas as a joint tenant to her bank accounts. Imogene spoke with a bank officer and filled out a worksheet indicating she wanted to leave her property to various cousins, nieces, and nephews. The worksheet did not include Imogene's half-brother, Orvey Cousatte, as a beneficiary of her estate. Imogene told the bank representative that she wanted Lucas to handle her affairs.

In September 1996, Imogene met with an attorney recommended by the bank to draft a will and trust. Imogene told the attorney that she would like Lucas to inherit her estate. According to the attorney, Imogene was alert and able to understand her actions when she signed the will and trust.

Imogene died at age 77 on February 19, 1997. In March 1997, Orvey Cousatte brought an action to have Imogene's will and trust set aside as the product of Lucas' undue influence. At the conclusion of the trial, the district court found Imogene had testamentary capacity to execute the will and trust and that a fiduciary relationship existed between Imogene and Lucas. The court further determined that based upon the evidence before it, Cousatte had not made a prima facie showing of undue influence. Nevertheless, the district court concluded it was immaterial whether undue influence occurred because Cousatte was not contemplated as a beneficiary of the will.

### Cousatte I

Cousatte appealed the district court's ruling to this court but did not seek a supersedeas bond or a stay pending appeal. Thus, while the matter was on appeal to this court, Lucas sold Imogene's home and applied the proceeds to pay off the mortgage on her own home. Lucas then sold her home and used the proceeds to purchase a new residence. The parties have stipulated that $77,273.06 of the

proceeds from the sale of Imogene's home can be traced to Lucas' new residence.

In *Cousatte v. Lucas* (*Cousatte I*), No. 80,637, unpublished opinion, filed January 21, 2000, this court reversed the district court and remanded for the district court to make findings pursuant to *Logan v. Logan*, 23 Kan. App. 2d 920, 937 P.2d 967, *rev. denied* 262 Kan. 962 (1997). Specifically, the trial court was directed to determine whether "suspicious circumstances" existed regarding the execution of Imogene's will and trust. If so, the trial court was directed to determine whether Lucas rebutted the presumption of undue influence. *Cousatte I*, Slip op. at 4.

*Cousatte II*

On remand, the district court issued its findings based upon the evidence presented at the December 1997, trial. The district court found suspicious circumstances surrounded the relationship between Collier and Lucas, and Lucas failed to rebut the presumption of undue influence established by those circumstances. The court thus concluded the will and trust were null and void, and set aside any conveyances made by Imogene to the trustees. The district court further ordered that all personal and real property owned by Imogene at the time of her death be transferred to Cousatte as administrator of the estate. Further, the court ordered that certain itemized property, or the proceeds thereof, be delivered to Cousatte.

Lucas appealed, arguing the district court was precluded from modifying its original factual determination that there had been no undue influence. In *Cousatte v. Lucas* (*Cousatte II*), No. 86,463, unpublished opinion, filed March 1, 2002, this court concluded the district court had followed the mandate of this court and its findings were supported by substantial competent evidence. *Cousatte II*, Slip op. at 6.

*Adversary proceeding in bankruptcy action*

On May 7, 2001, while *Cousatte II* was pending in this court, Lucas filed for bankruptcy. The bankruptcy was filed in response to Cousatte's attempt to enforce the judgment he received following this court's remand to the district court. Cousatte commenced

an adversary proceeding in the bankruptcy court arguing Lucas' conduct in procuring the will and trust and in disposing of the trust assets during the first appeal constituted fiduciary fraud, embezzlement or larceny, or willful and malicious injury. As such, Cousatte sought a finding from the bankruptcy court that the debt owed to him by Lucas was excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) and (a)(6) (2000). Cousatte also sought affirmative relief from the bankruptcy court in the form of a constructive trust upon Lucas' homestead and vehicle.

In a memorandum opinion dated December 5, 2002, the bankruptcy court divided the relevant time period into two segments: the debtor's conduct prior to Imogene's death when the undue influence allegedly occurred, and the debtor's conduct between the entry of the first state court judgment and this court's reversal and remand in *Cousatte I*. With respect to the first time period, the bankruptcy court considered whether the state court's finding of a presumption of undue influence was equivalent to fiduciary fraud under § 523(a)(4) or malicious damage to property interest under § 523(a)(6). The court concluded collateral estoppel did not apply because there was no "identity of issues"—*i.e.*, the existence of a "fiduciary relationship" for the purposes of undue influence did not meet the "technical trust" requirements for a fiduciary relationship under § 523(a)(4). Slip op. at 13.

Regarding Lucas' conduct during the pendency of the first appeal, the bankruptcy court held Cousatte failed to establish embezzlement or larceny under Section 523(a)(4) or (6) because when Lucas liquidated the trust fund assets, she had a valid state court judgment permitting her to do so. The court also found the collateral estoppel effect of the undue influence judgment afforded no basis from which to find a willful injury under § 523(a)(6) because Cousatte was not a beneficiary under either the will or trust and, thus, there was no evidence that Lucas intended to injure Cousatte or his rights as a lawful heir. Finally, the court concluded that because the debt was not excepted from discharge, it was unnecessary to reach the constructive trust issue. The bankruptcy court thus dismissed Cousatte's adversary proceeding. Slip op. at 17.

*Appeal of adversary ruling*

Cousatte appealed the bankruptcy court's ruling to the Tenth Circuit's Bankruptcy Appellate Panel (BAP). The BAP affirmed the bankruptcy court's dischargeability ruling, but remanded the case for consideration of whether Lucas held any property in constructive trust. *In re Lucas*, 300 B.R. 526, 534 (Bankr. 10th Cir. 2003). The BAP reasoned that if the property was subject to a constructive trust, it was not property of the bankruptcy estate because Lucas held only legal, rather than equitable, title to the property. 300 B.R. at 533-34.

The BAP concluded the bankruptcy court erred when it determined that because the debt was dischargeable, it need not address the issue of whether a constructive trust had been imposed. *In re Lucas*, 300 B.R. at 534. The BAP remanded the case to the bankruptcy court to "either resolve the constructive trust issue with further findings, or, if it determines that the issue is not properly before it, dismiss it without prejudice." 300 B.R. at 534.

*Remand to bankruptcy court*

In a decision dated March 2, 2004, the bankruptcy court stated the issue on remand as whether "this Court should declare that the property (*i.e.*, a house and a car) acquired by Lucas with assets and proceeds of Collier's estate is held by Lucas in constructive trust for Collier's heirs at law." *In re Lucas*, 307 B.R. 703, 705 (Bankr. D. Kan. 2004).

The bankruptcy court held that it lacked jurisdiction to impose a constructive trust because Cousatte failed to object to Lucas' exemption of her home and vehicle; thus, whatever interest Lucas had in these items was no longer part of the bankruptcy estate. The court noted, however, that even if it did have jurisdiction, it would not find a constructive trust because the final and nonappealable state court judgment contained no reference to the declaration or imposition of a constructive trust, and the bankrutpcy court could not modify the state court's judgment by imposing the additional remedy of a constructive trust to the existing judgment. Further, the court held the evidentiary record before the court was insufficient to find the fraud or constructive fraud required to im-

pose a constructive trust under Kansas law. *In re Lucas*, 307 B.R. at 707-709.

Finally, the bankruptcy court ruled that because Lucas' debt to Cousatte was permanently discharged, Cousatte was permanently enjoined from taking any action against Lucas in personam. However, because Lucas' home and vehicle were exempt under 11 U.S.C. § 522(1) (2000), the court found they were no longer protected by the discharge injunction and in rem relief might be available under state law. The bankruptcy court declined to express an opinion concerning the prospective merits of any such action. *In re Lucas*, 307 B.R. at 709.

*Quiet title action*

Before discussing the instant appeal, and for the sake of a complete recitation of the procedural history of this matter, we note that Cousatte also brought a separate quiet title action against the purchasers of Imogene's home, in which he attempted to set aside the transfer of that property due to undue influence in creating the trust. The district court granted summary judgment for Cousatte, but in a published opinion, this court reversed and remanded, finding that the lack of a specific description of the real property in Cousatte's 1997 petition asserting undue influence precluded application of the doctrine of lis pendens in the quiet title case. See *Cousatte v. Collins*, 31 Kan. App. 2d 157, 61 P.3d 728 (2003).

*The current proceeding*

Presumably acting on the bankruptcy court's suggestion that in rem relief might be available under state law, Cousatte filed the current action in state court on April 19, 2004, seeking imposition of a constructive trust on Lucas' home. Following a bench trial, at which no new testimony was presented, the district court dismissed Cousatte's petition, citing several reasons for its decision: (1) Lucas acquired Imogene's property pursuant to a valid order of the state court and not by any means of fraud or conversion, (2) the underlying debt owed to Cousatte was discharged by the bankruptcy court, (3) the bankruptcy court found no support for the existence or impression of a constructive trust, (4) the state court's judgment in favor of Cousatte did not create a constructive trust in any prop-

erty, (5) Lucas' home was set aside as exempt by the bankruptcy court, (6) Cousatte failed to state a claim and was precluded by res judicata and collateral estoppel from seeking a constructive trust against Lucas' residence, and (7) no constructive trust attached to Lucas' property. This appealed followed.

On appeal, Cousatte argues the district court erred in finding it could not impose a constructive trust on the proceeds used to acquire the residence where the bankruptcy court set aside Lucas' home as exempt. Cousatte further argues the bankruptcy court's decision does not have res judicata or collateral estoppel effect on the constructive trust issue. Finally, Cousatte contends the district court erred by failing to impose a constructive trust on Lucas' residence to the extent of the trust funds used to purchase the residence.

### Exemption of home and vehicle

Cousatte first argues the district court erred in finding that because Cousatte did not object to the exemption of Lucas' home from the bankruptcy estate, the court could not impose a constructive trust in this action.

We agree with Cousatte that the district court erred with respect to this finding. As the bankruptcy court pointed out, Lucas' debt to Cousatte was permanently discharged through the bankruptcy proceeding. Lucas' residence, however, was exempted from the bankruptcy proceeding and was not protected by the discharge. As the bankruptcy court further noted, although that court had no jurisdiction over the exempt property, Cousatte might be entitled to in rem relief under state law.

Thus, we conclude Cousatte's failure to object to the exemption of Lucas' residence in the bankruptcy proceedings did not bar this in rem action filed in state district court.

### Res judicata and collateral estoppel

Cousatte next argues the district court erred in finding the doctrines of res judicata and collateral estoppel precluded imposition of a constructive trust. Cousatte points out that on remand from the BAP, the bankruptcy court ruled that because Lucas' home was exempt, the court did not have jurisdiction to rule on the con-

structive trust. Cousatte reasons that because there was no adjudication on the merits, res judicata and collateral estoppel do not apply.

Whether the doctrines of res judicata and collateral estoppel apply is a question of law over which this court has plenary review. *In re Care & Treatment of Johnson*, 32 Kan. App. 2d 525, 530, 85 P.3d 1252 (2004).

"An issue is res judicata when four conditions concur: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and identity in the quality of persons for or against whom claim is made. [Citation omitted.] The requirements of collateral estoppel are: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. [Citation omitted.]" *Regency Park v. City of Topeka*, 267 Kan. 465, 478, 981 P.2d 256 (1999).

Cousatte is correct that the bankruptcy court found it lacked jurisdiction. Nevertheless, the bankruptcy court further held: "Even if this court had jurisdiction to declare or impose a constructive trust, the facts and evidentiary record before this Court are insufficient to establish a constructive trust under Kansas law." 307 B.R. at 710.

Clearly, the bankruptcy court based its dismissal on a lack of jurisdiction and its further rulings as to imposition of a constructive trust represent dicta. Because the issue litigated was neither decided on the merits nor necessary to support the bankruptcy court's judgment, we agree with Cousatte that the doctrines of collateral estoppel and res judicata do not bar imposition of a constructive trust in this case.

*Denial of imposition of a constructive trust*

We next consider Cousatte's argument that the district court erred in ruling on the merits of this action—*i.e.*, in finding no constructive trust attached to the property.

Commonly, when a trial court makes specific findings of facts and conclusions of law, the function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are

sufficient to support the trial court's conclusions of law, over which an appellate court has unlimited review. *U.S.D. No. 233 v. Kansas Ass'n of American Educators,* 275 Kan. 313, 318, 64 P.3d 372 (2003); see *Nicholas v. Nicholas,* 277 Kan. 171, 177, 83 P.3d 214 (2004);. However, "the application of an equitable doctrine[, such as a constructive trust,] rests within the sound discretion of the trial court. [Citation omitted.]" *Bankers Trust Co. v. United States of America,* 29 Kan. App. 2d 215, 218, 25 P.3d 877 (2001). A court abuses its discretion when no reasonable person would take the view adopted by the trial court. *State v. Bey,* 270 Kan. 544, 546, 17 P.3d 322 (2001).

The district court recited several reasons for denying the imposition of a constructive trust. Before we consider whether the court abused its discretion in so ruling, we note that the record is unclear as to the basis Cousatte relies upon for the imposition of a trust. The petition, the pretrial conference order, and Cousatte's trial brief all recite the substantive and procedural history of this case, including the finding of undue influence by the state court and Lucas' liquidation of the trust assets during the pendency of the first appeal. However, all of Cousatte's pleadings conclude that because the proceeds of the trust can be traced to Lucas' current residence, a constructive trust exists in the residence. Cousatte's brief on appeal provides no further illumination as to the specific factual basis supporting the imposition of the trust.

Rather, in support of his contentions, Cousatte cites cases standing for the proposition that where a fund has been wrongfully or erroneously disbursed, equity will follow it as far as it can be traced and will impress a trust upon it for the benefit of the parties' entitled thereto. See, *e.g., Woods v. Duval,* 151 Kan. 472, 99 P. 2d 804 (1940); *Myers v. Board of Education,* 51 Kan. 87, 99, 32 Pac. 658 (1893).

The flaw in Cousatte's conclusory analysis is that it skips at least two steps necessary for the imposition of a constructive trust. As the Kansas Supreme Court succinctly stated in *Woods*:

"Before [a constructive trust may be equitably impressed,] the fraud must be proven, the equitable redress must be timely invoked, and the fund or property

must be clearly traced into the hands of some person who has received it, and it still must be in existence." 151 Kan. at 480.

Here, Cousatte skips directly to the third prerequisite and points out that the proceeds of Imogene's trust are traceable to Lucas' residence—a point on which both parties agree. However, Cousatte makes no clear statement in his appeal brief, or in the record below, as to the evidentiary basis for the fraud required for imposition of the trust or whether the relief was timely sought. We will address those issues in reverse order.

### Was this relief timely sought?

Our review of the record reveals that Lucas asserted the statute of limitations as an affirmative defense in her answer and in the pretrial conference order, and both parties addressed the issue in their trial briefs below. However, the issue of the timeliness of this action was not addressed by the trial court, nor was it asserted on appeal. An issue not briefed by the appellant is deemed waived or abandoned. *State v. Holmes*, 278 Kan. 603, 622, 102 P.3d 406 (2004).

Nevertheless, we will briefly discuss the arguments made by the parties in the trial court with respect to the statute of limitations issue, as those arguments are relevant to our subsequent discussion of the evidence of fraud, if any, asserted in support of the imposition of a constructive trust.

The 2-year statute of limitations applies to an action for imposition of a constructive trust. See K.S.A. 60-513(a)(3). See generally *Herthel v. Barth*, 148 Kan. 308, Syl. ¶ 1, 81 P.2d 19 (1938) (where the essence of a claim is to seek the imposition of a constructive trust because of the trustee's fraudulent conduct, the 2-year statute of limitations applies).

"[T]he statute [of limitations in such an action] begins to run from the date the trust is repudiated, *Flitch v. Boyle*, 147 Kan. 600, 78 P.2d 9; *Allbert v. Allbert*, 148 Kan. 527, 83 P.2d 795, and cases therein cited, or [as] the rule is . . . sometimes stated, . . . the statute does not begin to run from the date of demand on the trustee and repudiation by him, but starts to run from the date the trustee commits a wrong or breach of his trust by which he becomes chargeable." *Staab v. Staab*, 158 Kan. 69, 75, 145 P.2d 447 (1944).

In the pretrial conference order, Lucas' contended: "[P]laintiff is barred by the [2-year] statute of limitations from bringing this action based upon fraud having waited seven years from the initial claims to make the claim." Further, in Lucas' trial brief, she asserted: "To the extent Cousatte relies upon the conduct of Lucas prior to the death of Imogene Collier when she executed her Will and Trust, as a basis for claiming a constructive trust, that claim is barred by the statute of limitations."

In his trial brief, Cousatte conceded application of a 2-year statute of limitations, but asserted his cause of action accrued when the trial court ruled in his favor on July 27, 2000. Cousatte further argued the statute of limitations was stayed during the bankruptcy, from May 7, 2001, to March 2, 2004. Because the current action was filed April 19, 2004, Cousatte concluded the 2-year limitation period had not expired.

Significantly, Cousatte did not suggest at any point in the proceedings below that the fraud required to be established for the imposition of a constructive trust arose prior to Imogene's death when Lucas allegedly unduly influenced Imogene in the execution of her will and trust, or when the trial court found the presumption of undue influence was not rebutted by Lucas. Nor did Cousatte suggest that the fraud occurred when Lucas liquidated the trust assets and utilized the proceeds to purchase her current home.

*Evidence of fraud as basis for imposition of constructive trust*

Keeping in mind the parties' respective positions in the trial court regarding the accrual of the cause of action and the basis for imposition of a constructive trust, we next consider whether the district court erred when it found no constructive trust attached to Lucas' home even though it was purchased with funds traceable from Imogene's trust.

" 'A constructive trust arises wherever the circumstances under which property was acquired make it inequitable that it should be retained by the person who holds legal title.' [Citation omitted.]" *Garret v. Read*, 278 Kan. 662, 673, 102 P.3d 436 (2004).

To prove a constructive trust, there must be a showing of either actual or constructive fraud. *Kahm v. Klaus*, 64 Kan. 24, 26, 67

Pac. 542 (1902) (a trust which the law implies from existing facts and circumstances, *i.e.*, a trust which arises by operation of law, may be established by either actual or constructive fraud). Actual fraud is not at issue here.

" 'Constructive fraud is a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty [n]or purpose or intent to deceive is necessary.' [Citation omitted.] Two additional elements also must be proved: '[T]here must be a confidential relationship [, and] the confidence reposed must be betrayed or a duty imposed by the relationship must be breached.' " *Garret*, 278 Kan. at 674 (quoting *Logan v. Logan*, 23 Kan. App. 2d 920, Syl. ¶¶ 7, 8, 937 P.2d 967, *rev. denied* 262 Kan. 961 [1997]).

Thus, in order to prove constructive fraud, Cousatte must have established the existence of a confidential relationship and a betrayal of that confidence, or a breach of a duty imposed by the relationship. See *Logan*, 23 Kan. App. 2d at 927.

As discussed above, Cousatte did not identify a basis for the imposition of a constructive trust in the trial court, other than to suggest that a cause of action accrued when the district court entered judgment for Cousatte following remand from this court. At trial, the court questioned Cousatte's counsel as to the nature of his argument:

THE COURT: "[D]oesn't [the request for a constructive trust] have to be a specific request, an order of the Court, with regard to establishing a constructive trust? It doesn't establish itself, as a matter of law, just because you have a judgment, does it?"

Cousatte's counsel responded that the judgment did not automatically establish the trust but argued that because funds from Imogene's trust could be traced to Lucas' residence, the "law of tracing" required imposition of a constructive trust.

While we are unfamiliar with "the law of tracing," we find that the fact that trust funds may be traced to Cousatte's residence is insufficient to establish fraud, which is a prerequisite to imposition of a constructive trust.

The district judge so held:

"While I find that funds may be traceable, I do not find that there's any automatic constructive trust that attaches to a judgment simply because the funds

used in—by the defendant, in this case, could be traceable to her own accounts or at least some of them. . . . There has been no order with respect to the case that would establish a constructive trust on the proceeds."

We agree with the district court's conclusions. At no point in this action did Cousatte identify, much less prove, the fraud necessary to impose a constructive trust. Instead, Cousatte simply relied upon the fact that the district court entered a judgment in his favor on remand, and funds from Imogene's trust could be traced directly to Lucas' residence.

Moreover, even if Cousatte had alleged as an evidentiary basis for the fraud either (1) the trial court's finding of an unrebutted presumption of undue influence in the execution of Imogene's will and trust; or (2) Lucas' liquidation of the trust assets during the pendency of the first appeal, the district court's denial of the imposition of a constructive trust contemplated and rejected such allegations.

*Presumption of undue influence as basis for imposition of constructive trust*

In refusing to impose a constructive trust, the district court found Lucas acquired Imogene's property pursuant to a valid order of the state court and "not by any means of fraud or conversion." The district court also cited with the approval the bankruptcy court's determination that no support existed for the existence or impression of a constructive trust. As discussed below, these findings refer to the bankruptcy court's determination that the state court's finding of a presumption of undue influence did not establish the fraud necessary for imposition of a constructive trust.

The bankruptcy court cited *Logan v. Logan*, 23 Kan. App. 2d 920, for the proposition that "merely establishing undue influence is not sufficient under Kansas law to impose a constructive trust." In *Logan*, this court affirmed the trial court's finding of undue influence based on the defendant's failure to rebut a presumption of undue influence but separately considered the issue of whether to impose a constructive trust. 23 Kan. App. 2d at 925-26.

As the bankruptcy court pointed out, Kansas law "suggests that undue influence is a species of fraud." *In re Lucas*, 307 B.R. at

709 (citing *In re Estate of Hall*, 165 Kan. 465, 470, 195 P.2d 612 [1948]). Further, "the definition of undue influence includes 'coercion, compulsion and restraint as to destroy the testator's free agency, and by overcoming his power of resistance, obliges or causes him to adopt the will of another rather than exercising his own.' " *In re Lucas*, 307 B.R. at 709 (citing *Heck v. Archer*, 23 Kan. App. 2d 57, 62, 927 P.2d 495 [1996]). Moreover, as the bankruptcy court also noted, the influence exerted must directly affect the testamentary or inter vivos act itself. 307 B.R. at 709.

The bankruptcy court examined the records before it and found that the district court's determination of the existence of a presumption of undue influence, which went unrebutted by Lucas, did not establish the constructive fraud necessary to impose a constructive trust:

"Very little in the state court's decision points to 'coercion, compulsion and restraint.' Instead, the state court merely found that 'suspicious circumstances' which raise a *presumption* of undue influence were present, shifting to Lucas the burden of proving that she did not coerce or compel Collier, and that Lucas failed to meet that burden." 307 B.R. at 709.

The bankruptcy court concluded that while "[t]here may well have been a sufficient record in the Civil Action to justify the state court's imposition of a constructive trust had it been requested there, . . . the factual record before this Court is far from adequate for that purpose." *Lucas*, 307 B.R. at 709.

Significantly, in presenting the constructive trust issue to the district court, Cousatte did not request that the court hear or consider any additional evidence with respect to the issue of whether Lucas breached an equitable duty to Imogene such as would permit the imposition of a constructive trust. Moreover, the district court, in denying imposition of a constructive trust, noted that the record before it included the court's file in the 1997 civil action for undue influence. Thus, the factual record before the district court, like the factual record before the bankruptcy court, did not justify the imposition of a constructive trust.

Accordingly, we find that the district court's July 27, 2000, judgment on remand in which it found a presumption of undue influence based upon suspicious circumstances and a failure to rebut

that presumption did not establish the fraud required for the imposition of a constructive trust, and the district court did not err in so finding.

*Lucas' actions during the pendency of the first appeal*

As discussed above, the district court held that Lucas acquired Imogene's property pursuant to a valid order of the state court and not by any means of fraud or conversion. Thus, the district court's holding also was broad enough to encompass a finding that the evidence did not support the imposition of a constructive trust based upon Lucas' liquidation of the trust assets during the pendency of *Cousatte I.* As discussed below, the district court did not abuse its discretion in this regard.

Lucas' actions during the pendency of the first appeal were summarized by the bankruptcy court in its initial decision finding Lucas' debt was not excepted from discharge under the fraud exception:

"By the time the first Court of Appeals' opinion was handed down in January of 2000, Lucas had liquidated all of the Trust assets. During this time period, Lucas had a valid judgment that declared she was the rightful beneficiary and owner of the Trust assets. Lucas was operating under the authority of the first judgment. While she ran the risk of having to turn over the trust property or proceeds thereof if the judgment was reversed on appeal, she was *at that time* acting pursuant to a lawful order of the court. If Cousatte had wanted to prevent the liquidation and disposal of Trust assets during the pendency of the appeal, he could have posted a supersedeas bond to obtain a stay of the judgment pending the appeal. If Lucas had then liquidated the Trust in violation of the stay, a different result might obtain. But here, where Lucas acted pursuant to a lawful order of the Court, it cannot be concluded that she committed fiduciary fraud, embezzlement, larceny, or willful injury by liquidating the Trust. Thus, Lucas' conduct during the pendency of the first appeal provides no basis for a §523(a)(4) or (a)(6) exception to discharge." Slip op. at 10.

While the issue before the bankruptcy court was not whether Lucas' actions during the pendency of the first appeal established constructive fraud under Kansas law, but rather whether her actions permitted application of the fraud or embezzlement exceptions to discharge under the bankruptcy code, the bankruptcy court's analysis is persuasive here.

At the time Lucas liquidated the trust assets, she had a valid judgment in her favor and Cousatte did not seek or obtain a stay preventing her from liquidating the trust assets during the pendency of the appeal. Moreover, no evidence was presented in the trial of this matter from which the trial court could have determined that in liquidating the assets pursuant to a valid state court judgment, Lucas breached any duty imposed by her relationship with Imogene. Thus, even if Cousatte had pointed to Lucas' actions during the pendency of the first appeal as the basis for imposition of a constructive trust (and those actions were timely alleged), the conduct alleged could not have established the fraud required for imposition of a constructive trust.

In conclusion, we hold that Cousatte failed to prove the fraud necessary for the imposition of a constructive trust, and the district court did not abuse its discretion in refusing to impose a constructive trust under the facts of this case.

The judgment of the district court is affirmed.