NOT DESIGNATED FOR PUBLICATION

Nos. 127,548
127,573

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CLIFFORD SPARKS, JR., and DAVID SPARKS,
*Appellees/Cross-appellants*,

v.

Estate of CLIFFORD SPARKS, SR., et al.,
*Appellants/Cross-appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Oral argument held August 5, 2025. Opinion filed April 24, 2026. Affirmed in part, reversed in part, and remanded with directions.

*Michele M. O'Malley*, *Meghan E. Lewis*, *Katrina L. Smeltzer*, and *Joshua J. Sipp*, of Sandberg Phoenix & von Gontard P.C., of Kansas City, Missouri, for appellants/cross-appellees.

*David S. Lockett*, of Kreamer, Arney, Wait & Bottaro, L.C., of Overland Park, for appellees/cross-appellants.

Before ISHERWOOD, P.J., SCHROEDER and PICKERING, JJ.

ISHERWOOD, J.: A father's word and a broken promise caused the parties to seek our review in this interlocutory appeal. Clifford Sparks Sr. (Senior) made an oral promise that each of his three sons would inherit a one-third interest in his entire estate upon his death. As consideration for the promise, Senior had each of his sons waive in a family settlement agreement all of their interest in the assets, both real and personal, they inherited from their deceased mother so he could keep the family farm together. Senior,

however, revised his trust multiple times prior to his death and breached his agreement. The district court found that Senior committed constructive fraud and then created a constructive trust to remedy the breach. Senior's children disagree with the district court's findings, and the imposition of the constructive trust as it relates to only the assets each child would have received from their mother's estate.

We find the district court did not err in concluding Senior committed constructive fraud, but we do find error in what assets must be included in the constructive trust. We also find that the district court erred in failing to explain its denial of any affirmative defenses, but the error was harmless. As such, we affirm in part, reverse in part, and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

Senior had three children with his wife, Juanita Sparks—Clifford Sparks Jr. (Junior), David Sparks, and Gary Sparks. Juanita and Senior owned real property in Johnson County as tenants-in-common. When Juanita died intestate in 1989, her estate passed through intestate succession—one-half to Senior and one-half split equally between the three children.

In 1993, Senior presented a family settlement agreement to Junior, David, and Gary, asking them to waive their right to their respective shares of Juanita's estate. Junior testified the family settlement agreement was "to keep the family farms together." Junior, David, and Gary each signed the family settlement agreement without reading it or having a lawyer review it because "[they] trusted [their] dad."

Junior and David claimed that, in exchange for signing the family settlement agreement, Senior promised to split his entire estate equally among the three children upon his death. Gary, however, did not remember Senior making such promise.

2

In May 1993, the probate court accepted the family settlement agreement after a hearing wherein only Senior and his counsel appeared. In 2002, Senior established the Clifford C. Sparks, Sr. Revocable Trust. Senior amended the Trust three or more times between 2013 and 2018.

David and Junior agreed that, up until 2018, Senior's estate was to be divided equally among his three children, with the exception of some specific gifts of property to other family members and an education fund for Senior's grandchildren. However, Senior amended the Trust in 2018, leaving Junior and David only $50,000 each, subject to forfeiture if they contested the 2018 Trust, and leaving 100 percent of the remaining trust estate to Gary. Gary was designated as the trustee of the 2018 Trust following Senior's disability or death.

Senior died in March 2019. After Senior's death, Gary informed Junior and David of the 2018 Trust and its amendments. David subsequently signed a distribution agreement and accepted the $50,000 distribution bequeathed to him by Senior under the 2018 Trust. The distribution agreement provided David acknowledged and agreed "by accepting the specific distribution set forth in the trust and herein, he is now and forever consenting to the validity and terms of the trust" and "his acceptance of the specific distribution means that he is not now and will never contest or oppose the validity of the trust or any amendments thereto."

Junior did not accept the $50,000 distribution and, in August 2019, filed a petition for declaratory judgment, equitable relief, temporary injunctive relief, and attorney fees against various relatives including, among others, Gary—individually and as trustee of the 2018 Trust—and David. Gary and his daughter were the only relatives to file an answer to Junior's petition.

3

In March 2021, David and Junior filed a petition for damages, asking the district court to find constructive fraud as they reasonably relied on Senior's promise to equally transfer one-third of his estate assets to each of his three children upon his death. David and Junior asked the district court to establish a constructive trust and to quiet title to all the assets, both real and personal, thereby granting each child a one-third interest in all of the assets or proceeds of Senior's trust estate.

Junior and David moved to consolidate the two cases, as they arose out of the same operative facts:

"(1) [Senior] made a promise to his three sons that he would divide his real-estate equally between them upon his death; (2) Defendant Gary Sparks unduly influenced [Senior] to remove his two sons, [Junior and David], from his probate plan, (3) Gary Sparks' undue influence worked, and (4) [Senior] essentially disinherited his two sons, contrary to his promise, and contrary to the history of his 25-year promise and his sixteen-year probate plan."

The district court granted the motion to consolidate.

The district court held a bifurcated three-day bench trial on the claims of undue influence, unjust enrichment, attorney fees, constructive fraud, and quiet title. Several relatives testified at trial, as well as Senior's financial advisor and estate planning attorneys. The district court found:

- Following Juanita's death, "Clifford Jr., Davi[d] and Gary Sparks were entitled to receive an intestate share of Juanita's estate which included the intestate interests in the real estate described in Juanita's probate pleadings."

4

- David's and Junior's testimony reflected that Senior "'promised each of his sons that if they waived their intestate interest in Juanita's Property, he would make sure that Juanita's Property, together with any After-Acquired Property[,] would be divided equally between his three sons upon his death.'"

- Senior, Junior, David, and Gary entered into a family settlement agreement, which stated that the sons "'hereby waive any right, title or interest in the following described real property, such property to pass outright and absolutely to their father, Clifford S. Sparks, Sr.'"

- The family settlement agreement "includes no provision for [Junior, David,] or Gary Sparks to receive a one-third interest in [Senior]'s Estate."

- Senior executed his first trust in November 2002 and later amended it three or more times, with the final amendment to the trust executed in 2018. Senior then died on March 20, 2019.

The district court concluded David and Junior failed to establish (1) clear and convincing evidence Gary unduly influenced Senior in drafting the 2018 Trust, as Senior relied on professional advice, and (2) suspicious circumstances between Gary and Senior. The district court also explained that Junior and David could not recover under a theory of unjust enrichment because they "failed to establish by sufficient evidence a confidential relationship between any of the parties, as discussed above a privity of interest between the promises of [Senior] and [Junior and David] and fail[ed] to establish the requisite element of proof for unjust enrichment." Junior and David were also not entitled to attorney fees in the first case because they did not successfully recover under their asserted claims.

5

The district court found Junior and David did establish their claim of constructive fraud by Senior breaching his fiduciary duty and violating in a deceitful manner the confidence and trust Junior and David placed in him. The district court explained that Junior and David were "entitled a Constructive Trust over the property they would have inherited through Juanita's estate had they not entered into the Family Settlement Agreement." The district court explained that Senior made a "false promise to leave his estate in equal shares to [his three children] if they waived their legal interest in Juanita's Property. [Junior and David] specifically allege they relied on [Senior's] promise . . . ." The district court reasoned that Junior and David were merely deprived of the 50 percent interest in Juanita's Estate that was taken from them because of Senior's conduct, not the full one-third interest in all of Senior's estate. It appears from the record the district court misspoke and should have said the three children were each entitled to one-third of 50% of their mother's estate.

The Estate and Gary, individually and as trustee, filed a motion to alter or amend the district court's judgment or, alternatively, to add findings of fact to the judgment. Junior and David filed a motion to reconsider, alter, or amend their remedy for constructive fraud and a motion to reconsider judgment on the unjust enrichment claim or, in the alternative, a motion to clarify and supplement.

Following a hearing, the district court entered a journal entry of judgment denying both parties' motions. The district court and the parties all agreed that an interlocutory appeal was appropriate before calculating damages. The district court certified the journal entries as final for interlocutory appeal.

The Estate and Gary timely appealed. David and Junior timely cross-appealed. Another panel of this court granted the parties' request for an interlocutory appeal. Additional facts are set forth as necessary.

ANALYSIS

*Senior committed constructive fraud.*

The Estate and Gary argue the district court's finding that Senior committed constructive fraud, as well as its imposition of a constructive trust in David and Junior's favor, was not supported by substantial competent evidence and relied upon an erroneous application of law. David and Junior contend the district court was correct to find constructive fraud and impose a constructive trust but erred in limiting the scope of the constructive trust to only their shares of Juanita's estate.

Fraud must be established by clear and convincing evidence. *Nelson v. Nelson*, 288 Kan. 570, 588, 205 P.3d 715 (2009). We review the district court's factual findings to determine whether they were supported by substantial competent evidence, but we review the district court's conclusions of law based on those facts de novo. We do not reweigh the evidence, assess witness credibility, or resolve evidentiary conflicts. *Geer v. Eby*, 309 Kan. 182, 190-91, 432 P.3d 1001 (2019).

"Constructive fraud is '"a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty [n]or purpose or intent to deceive is necessary."'" *Estate of Draper v. Bank of America*, 288 Kan. 510, 519, 205 P.3d 698 (2009). To establish a constructive fraud claim, there must be: "(1) a confidential relationship, and (2) a betrayal of this confidence or a breach of a duty imposed by the relationship." 288 Kan. at 519. A "'confidential relationship'" is defined as "any relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party." 288 Kan. at 519. The trier of fact must determine on a

case-by-case basis whether the parent-child relationship amounted to a confidential or fiduciary relationship. *Curtis v. Freden*, 224 Kan. 646, 651, 585 P.2d 993 (1978).

Here, David and Junior presented evidence showing Senior conducted his business based on his word, with many dealings secured by a handshake. Senior would say, "Your word is bond. You're only as good as your word. If your word is not good, you ain't no good." Several family members presented similar testimony. One of Senior's granddaughters testified Senior never told a lie and would often explain, "[I]f you don't have your word, you don't have anything." Junior's wife also testified that Senior was the type of man to operate on handshakes, even with business operations, proclaiming "if your word wasn't any good, you weren't any good." Even Gary, when asked, said he trusted Senior and believed Senior was truthful. As such, Junior and David signed the family settlement agreement without reading the document because they trusted their dad and took him at his word. Substantial evidence supports the district court's finding the parent-child relationship between Senior and his three children amounted to a confidential and fiduciary relationship.

The better practice would have been to make such an agreement in writing, however. Senior's oral agreement with his three sons was sufficiently established because Senior had expressed to other family members his desire to divide his estate equally among them, and prior versions of the 2018 Trust reflected an equal distribution. See *Kampschroeder v. Kampschroeder*, 20 Kan. App. 2d 361, 365-66, 887 P.2d 1152 (1995); *In re Estate of Proffitt*, No. 115,821, 2017 WL 2211088, at *10 (Kan. App. 2017) (unpublished opinion). The district court's finding that Senior committed constructive fraud was supported by substantial competent evidence.

*The constructive trust must contain all of Senior's property.*

David and Junior contend the district court correctly imposed a constructive trust but erred in limiting the scope of the constructive trust to the assets they would have received and any gains from Juanita's Estate and transferred to Senior in 1993.

"[T]he imposition of a constructive trust is a remedial device designed to prevent unjust enrichment by one who has an equitable duty to convey property to those to whom the property justly belongs." *Nelson*, 288 Kan. at 589. "'[T]he application of an equitable doctrine[, such as a constructive trust,] rests within the sound discretion of the trial court. [Citation omitted.]'" *Cousatte v. Lucas*, 35 Kan. App. 2d 858, 868, 136 P.3d 484 (2006).

The district court explained:

"[Senior's] After-Acquired Property could not have been 'taken from' [David and Junior] because it was never owned by [them]. Moreover, there are no allegations by [David and Junior] that [Senior's] After-Acquired Property was 'obtained by wrongful conduct' that in any way applies to [David and Junior]. Rather, [David and Junior's] allegations are that [Senior] promised he would bequeath back to them Juanita's Property, along with his After-Acquired Property in equal shares, upon his death and [David and Junior] waived their intestate shares in Juanita's Property in reliance on this promise. The Court finds that the property wrongfully obtained by [Senior] was each of [David and Junior's] intestate share in Juanita's Property.

"Thus, the Court determines the imposition of a constructive trust is appropriate here, and the property held in trust is [David and Junior's] intestate interests in Juanita's Property plus any gain in its value. And following the decision of the Kansas Supreme Court in *Nelson*, [David and Junior] are not entitled to a share of [Senior's] entire estate."

9

But the wrongful conduct was Senior's failure to perform in 2019 based on the promise he made in 1993. David and Junior would not have waived their interest in their respective shares of Juanita's estate if not for Senior's promise they would acquire one-third of Senior's entire estate instead of just a one-sixth interest in Juanita's Estate. David and Junior are each entitled to one-third of Senior's entire estate at the time of his death plus any gain in value, less any specific gifts to each child and the educational trust for the benefit of the grandchildren.

*The district court's failure to provide factual findings regarding the Estate and Gary's affirmative defenses was harmless error.*

The Estate and Gary asserted four affirmative defenses before the district court: (1) David and Junior waived their respective interests in all the assets acquired from Juanita by signing the family settlement agreement; (2) David waived his interest in Senior's estate by accepting the $50,000 distribution payment and signing a distribution agreement; (3) res judicata bars David's and Junior's claims because they were fully resolved by a final judgment in Juanita's probate action; and (4) David and Junior were barred by the statute of frauds. The Estate and Gary claim the district court erred in summarily concluding Senior committed constructive fraud "and that [the Estate and Gary's] affirmative defenses fail."

*Family settlement agreement and distribution agreement*

We find David and Junior could not have waived their respective interests in Juanita's estate by signing the family settlement agreement because they relied on Senior's breached promise to devise one-third of his estate to each child in exchange for signing the agreement. That is, David and Junior waived their interests in Juanita's estate and signed the family settlement agreement under circumstances they did not yet know would later become fraudulent. David also did not waive his interest in Senior's estate by

10

signing the distribution agreement as he would not have been in the position to take such an offer in the first place had he not relied on Senior's breached promise. Again, David conveyed his interest in Juanita's estate to Senior on the promise he would later receive one-third of Senior's estate.

*Res judicata*

"The doctrine of res judicata is a common-law rule of equity grounded in both notions of justice and in sound public policy, each of which demands that a party not be vexed with litigation twice on the same cause." *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015). A successive suit is barred under this doctrine if it involves: "'(a) the same claim; (b) the same parties; (c) claims that were or could have been raised; and (d) a final judgment on the merits.'" 302 Kan. at 434.

David's and Junior's claims were not barred by res judicata from the judgment in Juanita's probate case as the constructive fraud claim had not yet transpired and could not have been raised at that time. And Juanita's probate case would have been limited to her assets, not Senior's entire estate. A final disposition may have been reached with respect to Juanita's probate case, but a final disposition was not reached as to the breached oral promise by Senior or the distribution of Senior's estate. Thus, we find the district court's failure to provide sufficient findings of fact and conclusions of law over the Estate and Gary's res judicata defense harmless error.

*Statute of frauds*

The Kansas statute of frauds, K.S.A. 33-106, requires, among other things, "any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them . . . shall be in writing and signed by the party to be charged therewith,

11

or some other person thereunto by him or her lawfully authorized in writing." There is an exception to the statute of frauds:

> "It is a well accepted principle of law that the Statute of Frauds was enacted to prevent fraud and injustice, not to foster or encourage it, and a court of equity will not ordinarily permit its use as a shield to protect fraud or enable one to take advantage of his own wrongdoing. Nevertheless, oral contracts for the sale of land can be enforced for equitable reasons. The basis for removing the oral agreement from the Statute of Frauds is that one party has relied upon the agreement to his detriment and gross injustice would result if the oral agreement was not enforced. Absent compelling equitable considerations, however, an oral contract for the sale of land will be found to be within the Statute of Frauds and, therefore, not specifically enforced. [Citations omitted.]" *Bank of Alton v. Tanaka*, 247 Kan. 443, 452-53, 799 P.2d 1029 (1990).

The statute of frauds cannot be used here to foster or encourage a fraudulent transaction, allowing the Estate and Gary to take advantage of Senior's wrongdoing. David and Junior relied upon the agreement—they would each receive one-third of Senior's entire estate in exchange for assigning and waiving their interest in Juanita's estate for Senior's benefit—to their detriment, and a gross injustice would result if the oral promise and reliance upon it was not enforced.

*Conclusion*

We affirm the district court's establishment of a constructive trust but reverse its order limiting the constructive trust to the assets from Jaunita's estate and any increases. It should have included all of the assets of Senior's estate, less any specific gifts to each child and the educational trust for the benefit of the grandchildren. In reviewing the record, we note the parties and the district court referred to real property owned by Juanita and Senior and, at other times, referred to all of the assets of the estate. We remand for the district court to do an inventory and accounting to determine the assets of

12

Senior's estate at the time of his death and any changes since. The constructive trust should include all of the assets of Senior's estate and the assets, once determined, must be assigned in accordance with this opinion to Junior, David, and Gary as though Senior died intestate. Although it would have been better for the district court to address the affirmative defenses Gary and the Estate raised, we find that error was harmless.

Affirmed in part, reversed in part, and remanded with directions.