No. 21,007.

PETER ENGELBRECHT, *Appellant*, v. J. B. HERRINGTON, as ·Executor, etc., *Appellee.*

### SYLLABUS BY THE COURT.

ORAL CONTRACT—*Between Father and Son—Interest in Land—Repudiation of Contract—Specific Performance—Statute of Limitations.* An owner of land entered into a contract with his son, that if the son would remain at home and help the father pay a mortgage debt upon his farm he would leave to the son one-half of the farm at the death of the father and mother, and the son in accordance with the contract remained at home for about five years, during which time the mortgage debt was paid. More than twenty-six years after performance by the son had been completed the father conveyed the farm to a stranger, and died without devising any part of the land to the son. *Held,* in an action brought by the son for specific performance, or for damages in lieu of performance, that when the father conveyed the land to another and placed it beyond his power to devise one-half of the land to the son, and performance by the father became a legal impossibility, a cause of action accrued at once in favor of the son, and from that time the statute of limitations began to run against him.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed November 10, 1917. Affirmed.

*A. E. Crane, Oscar Raines, R. F. Hayden,* and *Robert Heizer,* all of Topeka, for the appellant. ·

*R. H. Gaw,* and *Z. T. Hazen,* both of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Peter Engelbrecht against J. B. Herrington, the executor of the will of Andrew Engelbrecht, deceased, to recover land, or rather the value of land, which it is alleged the deceased orally agreed to devise to plaintiff. Plaintiff appeals from a judgment in defendant's favor.

In 1878 Engelbrecht purchased a farm and at the same time executed a mortgage for most, if not all, of the purchase price. He and his family occupied it as a homestead from that time until June, 1909, when he sold and conveyed it to another. It was alleged by plaintiff that in 1884 his father

entered into an oral agreement with him by which it was agreed that if plaintiff would stay at home, work upon the farm and help earn money enough to pay the mortgage debt against it, he would leave plaintiff one-half of it at the death of himself and wife. It was further alleged that in June, 1909, the father, in violation of the contract, had sold the farm for $8,000, when it was really worth $12,000, and he therefore asked a recovery of $6,000. The answer of the defendant was a general denial and an averment that the action was barred by the statute of limitations. The testimony offered in support of the plaintiff's claim consisted principally of conversations which the plaintiff claimed to have heard between his father and mother, both of whom had died some time before this action was brought. He testified that one of these occurred about 1885, that the other was several months later, and that in each conversation his father had said to his mother that he had entered into a contract with Peter, by which he had agreed to leave Peter one-half of the farm when they (his parents) were through with it. The response of the mother in each case was: "I am glad of it." According to his testimony the same words were used by the father and mother in each of these conversations. He testified that about five years afterward he heard his father say to his mother that Peter had performed his part of the contract and that he now had money enough to pay off the mortgage. Although Peter was present at all of the conversations, he says he took no part in any of them. Nothing was said by either the father or mother to him nor by him to them. On this account it could not be said that these statements constituted communications or transactions had between him and deceased persons. Other witnesses, however, stated that they heard the father in his lifetime praise Peter and his work, and say that he would give the property to Peter when he died. Evidence produced by defendant consisted of facts and circumstances inconsistent with the contract pleaded. For instance, in 1901 Andrew Engelbrecht made a will leaving a life estate in the farm to his wife, and at her death the property was to be equally divided among his children, including Peter. There were eight children in the family, and it appears that others of them worked on the farm after they reached majority, although Peter and

Mrs. Herrington were at home much longer than the others after they became of age. When the farm was sold there was no recognition by Andrew Engelbrecht of a contract to give his son one-half of the land nor any suggestion that Peter had any interest in it. After his wife's death Andrew Engelbrecht executed another will, the one probated after his death, and in it he gave his property in equal shares to his children, with the exception of two of them, but Peter was given a share as though he had no claim or interest in the estate. The general verdict of the jury was in favor of the defendant, and they also returned answers to a number of special questions. Among other things, the jury found that the alleged contract had been made between plaintiff and his father, and that plaintiff had performed his part of it; that the farm was a homestead when the contract was made, but that the wife of Andrew Engelbrecht did not join in making the contract; and that she was afterwards informed that a contract had been made, when she said: "I am glad of it." It was also found by the jury that the oral contract could not be performed in a year, and that it was not intended by the parties that it should be performed within that time; and further, that the plaintiff could be compensated in money for his services rendered to his father from 1884 to 1889, and that the first time he ever made any claim to the farm or to the proceeds of it was in January, 1915, which was shortly before this action was brought. The plaintiff moved for judgment on the special findings and the admissions of the parties, but the court denied the motion and awarded judgment in favor of the defendant.

Much attention has been devoted to the question whether the parol contract was within the statute of frauds and therefore unenforceable on the grounds (1) that it was a contract affecting real estate, and (2) that it was not capable of performance nor intended to be performed within one year. Another contention argued at length is that the subject of the contract was a homestead and that as the wife did not join in the execution of the contract it was absolutely void. It is unnecessary to determine these questions so ably argued by counsel, as in the opinion of the court the contention that the action is barred by the statute of limitations must be sustained.

Engelbrecht v. Herrington.

The contract was made in 1884 and fully performed by plaintiff in 1889. He had completed his part of the contract twenty-six years before the action was brought. According to his version of the contract he was not to receive one-half of the farm until his parents were through with it. The expressions used were intended to convey the meaning that if he worked at home and helped to pay the mortgage debt his father would leave or will him one-half of the farm. The agreement, as we have seen, was in parol. He is seeking damages in lieu of specific performance of the contract, recognizing that performance of it has become impossible. An action upon an oral contract like the one under which plaintiff claims is barred within three years after the cause of action accrues. When a time is fixed for the performance of a contract, ordinarily there can be no breach of it until that time has arrived. Where an owner of land makes a promise to an employee that if he will perform personal services for him during his lifetime, the employee will be given a share of his estate, the right of action in favor of the employee will not accrue until after the death of the employer, unless in his lifetime he has committed an actionable breach of the contract. (25 Cyc. 1074.) If a party repudiates and renounces the entire contract the other is absolved from its obligations and may at his option bring an action at once for the damages he has sustained. (17 R. C. L. 759.) An illustration of the rule is found in *Heery v. Reed,* 80 Kan. 380, 102 Pac. 846, where a girl, Maggie, was taken into the home of Devenney to live with and work for him until the death of himself and wife, in consideration of which she was to receive all of his property at the death of himself and wife. After many years of service Devenney discharged her and drove her from his premises, and he made no provision for her in his will. In an action brought by her to recover the estate, it was contended that the discharge was a repudiation of the contract which set the statute of limitations in motion, and a recovery thereon was barred within three years after that time. The contention was not sustained, it being held that as the term of service of Maggie was to continue until the death of Devenney and wife, she was at liberty to ignore the breach and hold herself in readiness to perform the services contracted for until the

specified time. She had the option of accepting the renunciation and suing him for the damages sustained, but she also had the right to treat the contract as a subsisting one and await the time for final performance specified in the contract. Until that time the statute of limitations did not begin to run.

That authority is not controlling here. In this case the plaintiff had long since executed his part of the contract, and, what is of greater consequence, his father absolutely disabled himself from performing his part of the contract in June, 1909, by the conveyance of the land to another. Thereafter it was beyond the power of the father to leave or will one-half of the land to the plaintiff. The contract being fully executed on the part of the plaintiff and performance on the part of his father being a legal impossibility, the contract was at an end and the rights of the plaintiff then fully accrued. The action of the father was more than a renunciation which the plaintiff at his option might or might not elect to treat as a breach of the contract—it was a self-imposed disability which ended the life of the contract. There was no occasion or excuse to await the death of the plaintiff's father and mother, as performance was beyond the power of the father, and nothing that the plaintiff could do thereafter would revitalize the contract or enable him to obtain a share of the land that had been conveyed to a stranger. Whether he sought damages in lieu of the land or the value of his services on the *quantum meruit*, his cause of action had accrued when the conveyance was made, and from that time the statute of limitations was running against him. It has been said that—

"If the vendor has broken his contract by conveying the property to a third person, the purchaser's right of action for damages accrues at the time of the conveyance and the statutory bar is computed from that date." (25 Cyc. 1090.)

In 6 Ruling Case Law, page 1028, reference is made to the voluntary disability of a party to a contract, and it is said:

"Under the view that such a renunciation may be treated as a breach, a party to a contract has an immediate right of action if the act of the other party in voluntarily disabling himself from performing can be treated as a repudiation of the contract. Illustrations that have been given of this rule are the case of a man who, having promised to marry a woman on a certain day, marries another woman before that day, or

Engelbrecht v. Herrington.

where one who has contracted to execute a lease on a future day for a certain term, executes before that day a lease to another for the same term," etc.

In *Union Insurance Co. v. Central Trust Co.,* 157 N. Y. 633, the rule was applied to an arbitration agreement, and it was said:

"The principle is not confined to agreements of submission, but is applied to contracts generally, and the rule is universally recognized that where a party, before the time of performance arrives, puts it out of his power to keep his contract, there is an immediate right of action for a breach of that contract by anticipation." (p. 643.)

Authorities tending to support the view taken are *Wolf v. Marsh,* 54 Cal. 228; *Cochrane v. Oliver,* 7 Ill. App. 176; *Henry v. Rowell,* 64 N. Y. Supp. 488; *Harris v. Harris,* 70 Pa. St. 170; *Maitland v. Zanga,* 14 Wash. 92; *Crist v. Armour,* 34 Barb. (N. Y.) 378; *Burtis v. Thompson,* 42 N. Y. 246; *Stark et al. v. Duvall et al.,* 7 Okla. 213; *Crabtree v. Messersmith,* 19 Iowa, 179; Note, 8 Ann. Cas. 113.

Plaintiff's pleading can only be construed as an action for the enforcement of a contract under which he was to have specific property; namely, one-half of a certain farm. The statute of limitations began to run on the contract, either for specific performance or for damages in lieu of performance, as soon as the right of action thereon accrued. It accrued when the conveyance was made by plaintiff's father, which was more than three years before his action was commenced. His action can hardly be regarded as one on the *quantum meruit* for the value of personal services rendered by him, and even if it were open to that interpretation the statute of limitations would probably have run upon that action within three years after the services had been performed.

In any view, it must be held that the cause of action was barred when the action was commenced, and hence the judgment of the district court is affirmed.