(162 P.3d 43)
No. 97,664

ALBERT H. NELSON, III and MARKEYTA NELSON DEWEY, *Appellants*, v. DORIS H. NELSON, OKLAHOMA STATE UNIVERSITY FOUNDATION, an Oklahoma Non-profit Corporation, WICHITA STATE UNIVERSITY FOUNDATION, a Kansas Non-profit Corporation, and MARKEYTA NELSON DEWEY, in her capacity as Successor Trustee of the ALBERT H. NELSON, JR. IRREVOCABLE TRUST, *Appellees*.

Opinion filed July 6, 2007.

*William P. Tretbar,* of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellants.

*Coy M. Martin,* of Moore Martin, L.C., of Wichita, *Ted D. Ayres,* of Wichita State University Foundation, *Robert W. Coykendall,* of Morris Laing Evans Brock & Kennedy, Chtd., of Wichita, and *Scott D. Jensen* and *Eric Ireland,* of Bever Dye, L.C., of Wichita, for appellees.

Before McAnany, P.J., Elliott and Green, JJ.

Green, J.: Albert H. Nelson, III, and Markeyta Nelson Dewey (appellants) are the adult children of Margaret Nelson and Albert H. Nelson, II (Albert). Under the terms of a 1975 property settlement agreement with Margaret, Albert agreed to execute and maintain a will creating a testamentary trust funded with his entire estate and to provide in the trust for the appellants to receive one-half of the trust income. Albert died on June 19, 2003. No petition for administration of Albert's estate was filed in Kansas. Nearly 2 years after Albert died, the appellants sued Doris Nelson (Albert's second wife); Oklahoma State University Foundation, an Oklahoma Non-Profit Corporation; Wichita State University, a Kansas Non-Profit Corporation; and Intrust Bank, N.A., as Successor Trustee of the Albert H. Nelson, Jr. Irrevocable Trust (appellees). Although the appellants seek a variety of remedies, their argument was that Albert had breached the terms of the property settlement agreement by conveying various assets to third parties for inadequate consideration.

The trial court granted summary judgment in favor of the appellees, determining that the appellants should have brought their claim against Albert's estate. Under K.S.A. 59-2239, if no petition for administration of a decedent's estate is filed, an action against the decedent must be brought by starting administration of dece-

dent's estate within 6 months of the decedent's death. Because the appellants failed to file a petition for administration of Albert's estate within 6 months of Albert's death and to assert their demand against his estate, their claims are barred by K.S.A. 59-2239. Accordingly, we determine that the trial court properly granted summary judgment in favor of the appellees.

Margaret and Albert Nelson were married in 1942. Margaret and Albert had two children, the appellants, during their marriage. Around 1946, Albert started a business in Wichita that was primarily involved in fabricating metal parts for the aviation industry. The business was incorporated in 1966 and is called Globe Engineering Co., Inc. (Globe).

Margaret and Albert divorced in 1975. In connection with the divorce proceedings, Margaret and Albert entered into a property settlement agreement. Paragraph 9 of the property settlement agreement states in relevant part:

"Husband further covenants and agrees with Wife that Husband will execute and maintain, in full force and effect, a Will creating a testamentary trust to be funded by and with Husband's entire estate. Said trust will provide that the two (2) children of the parties hereto shall receive one-half (½) of the income from the trust after deduction of all taxes, debts, costs and expenses of administration, provided, however, that upon the death of either such child, said child's share of income shall be paid to the surviving child; provided, further, that the remaining debt, if any, of Husband to Wife under paragraph 2 hereof shall be deducted from the amount otherwise distributable to said children or child from said trust. The payments to said children or child shall be made not less often than annually."

The property settlement agreement was approved by the trial court and incorporated by reference as part of the journal entry and decree of divorce.

Margaret never remarried and died in 2001. Approximately 3 years after his divorce from Margaret, Albert married Doris Nelson. Albert remained married to Doris until he died in 2003. Before their marriage, Albert and Doris executed an antenuptial agreement where they agreed that the property brought by each party into the marriage would continue to be the sole and separate property of the respective party. A provision in the antenuptial agreement stated that "each of the parties acknowledge that here-

tofore there has been full disclosure to and from the other of the nature and extent of their respective property and assets."

In 1987, Albert established a revocable trust to be funded with all of his stock in Globe. Doris was named as the trustee of the revocable trust. The trust provided that after Albert died, one-half of the income generated by the trust assets would be distributed to Doris for life and the remaining one-half of the income would be distributed to appellants for life. In addition, Albert deeded the real estate on which Globe operated to Doris for "one dollar and love and affection." The deed was filed in May 1987 in Sedgwick County. Globe Engineering has since paid rent to Doris for its use of the property.

In 1987, Albert also designated Doris as the beneficiary of his interest in the Globe Engineering profit sharing plan. In addition, Albert opened a brokerage account with Paine Webber, Inc. The owners of the account were Albert and Doris as joint tenants with right of survivorship. The account was funded with the proceeds from two certificates of deposit that matured that year. In addition, Albert made additions to the account with some of the mandatory distributions he received from the Globe profit sharing plan.

In 1991, Albert made a will that provided for the establishment of two testamentary trusts. The first trust, the Charitable Remainder Annuity Trust, was to be funded with one-half of the residue of Albert's estate. Under the terms of this trust, at least five percent of the net market value of the trust assets were to be distributed yearly to the appellants in equal shares for the rest of their lives. Upon the death of the surviving appellant, the trust assets were to be distributed to Oklahoma State University. Doris was named trustee of the Charitable Remainder Annuity Trust. The second trust, the Doris H. Nelson Income Trust, was to be funded with the remaining one-half of the residue of Albert's estate. Doris was to receive distributions from the principal, if necessary or advisable, and the entire income from this trust.

The same firm represented Albert in his divorce from Margaret, in preparing the antenuptial agreement between Albert and Doris, and in preparing the 1991 estate planning documents. Albert later met with Don Stahr, an attorney with a different law firm, to review

his estate plan. Albert and Stahr reviewed paragraph 9 of the property settlement agreement. Stahr advised Albert that depending upon how aggressive he wanted to be, "gifting could eliminate all or substantially all income payment obligations to the children." Stahr advised Albert that "[g]ifts of your property to a charitable remainder trust or trusts, with income to you and Doris, for your respective lives, would seem to be a good solution."

Stahr prepared a pour-over will, two inter vivos trusts, and a general assignment. Albert executed these documents in June 1995. Doris was present at the time and executed the irrevocable trust and the general assignment.

One of the trusts was named the Albert H. Nelson, Jr. Living Trust (living trust). The living trust was designed to replace Albert's existing will. The living trust designated Albert as trustee during his lifetime and Doris as successor trustee upon Albert's death or disability. Albert had discretion during his lifetime to pay himself all or part of the income or principal of the trust. Upon Albert's death, one-half of the assets were to be held in the Doris H. Nelson Income Trust (income trust) and the other half of the assets were to be held in trust for the appellants. The appellants were to receive an annuity equal to six percent of the net fair market value of the assets held in trust for them. The annuity was to be divided in equal shares between the appellants; if one of the appellants died, the entire annuity was to be distributed to the survivor. Upon the death of both appellants, the remaining assets were to be distributed to Oklahoma State University Foundation and Wichita State University Endowment Association in equal shares.

Under the terms of the living trust, the income from the trust was to be paid to Doris during her life. When Doris died, the remainder of the assets in the income trust were to be distributed equally between Oklahoma State University Foundation and Wichita State University Endowment Association.

The other inter vivos trust was named the Albert H. Nelson Irrevocable Trust (irrevocable trust) with Doris designated as the trustee. Markeyta was designated as successor trustee. All trust income and, if necessary, the principal were to be paid to Doris for the rest of her life. Upon Doris' death, the remaining assets

were to be distributed equally between Oklahoma State University Foundation and Wichita State University Endowment Association. The irrevocable trust authorized the trustee to sell, assign, convert, convey, or dispose of assets in the trust. The pour-over will provided for the devise of any assets owned by Albert at his death to the trustee of the living trust.

Several months after the living trust and irrevocable trust were established, Albert conveyed all of his stock in Globe to the two trusts in roughly equal shares. By March 1999, all the Globe shares owned by the trusts had been sold to the Globe employee stock ownership plan. In October 1990, Albert and Doris purchased a residence in Florida. The warranty deed conveyed the property solely to Doris. In 1999, Albert and Doris gave money to the Oklahoma State University Foundation. Some of the money was given to endow a chair in the Department of Engineering in Albert's name.

Albert died in Florida on June 19, 2003. In February 2004, Doris suffered serious head injuries in a car accident, which adversely affected her memory and accelerated her existing Alzheimer's disease. At her deposition in this case, Doris did not recall ever reading paragraph 9 of the property settlement agreement or discussing it with Albert. Moreover, Doris indicated that she was unaware that Albert was required to leave property to the appellants.

Several days after Albert's death, Stahr wrote to the appellants and enclosed a copy of Albert's will and the living trust and explained the operation of the living trust. In his letter, Stahr referenced paragraph 9 of the 1975 property settlement agreement. Moreover, Stahr informed the appellants that paragraph 4 of the living trust provided for the disposition of certain items of personal property and the residence if they were part of the trust estate. Nevertheless, Stahr told the appellants that these items were actually owned by Doris and were not part of the estate. Markeyta later spoke with Stahr's partner, Eric Ireland, about Albert's estate. In August 2004, Ireland sent Markeyta a list of the assets to be included on Albert's estate tax return and described assets that had been held jointly with Doris with a right of survivorship and the assets held by the living trust and the irrevocable trust.

The appellants have never filed a petition for administration of Albert's estate in Kansas. Moreover, the appellants have never filed a claim against Albert or his estate in Florida. In April 2005, the appellants brought the present action against the appellees. The appellants sought a variety of remedies based on Albert's alleged breach of the property settlement agreement. When this action was commenced, Markeyta was listed as one of the defendants because she was the successor trustee of the irrevocable trust. Several months later, Intrust Bank, N.A., was substituted as the trustee to the irrevocable trust and became a defendant in the lawsuit.

The appellants later moved for partial summary judgment, arguing that they were entitled to an order imposing a constructive trust on a portion of the assets Albert had given to Doris. In addition, the appellants argued that they were entitled to an order requiring Doris to account for income generated by the gifted assets since Albert's death and to a money judgment against her for the amount the appellants should have received under the property settlement agreement. Finally, the appellants asked for the money judgment to include the amount of income that would have been produced since Albert's death "but for his substantial gifts to others."

The appellees also moved for summary judgment, arguing that the appellants' claims failed as a matter of law for the following reasons: (1) because the property settlement agreement did not impose the contractual duties identified by the appellants, let alone contractual duties that would bind any of the appellees; (2) because the appellants' claims were barred or limited by the 5-year statute of limitations relating to an action founded on contract; (3) because the appellants' claims constitute a demand against Albert's estate that was barred by their failure to timely assert the demand; and (4) because the appellants' legal construction of the property settlement agreement constituted an attempt to modify or vacate a judgment in violation of K.S.A. 60-260.

In a memorandum decision filed in October 2006, the trial court noted that the essence of the appellants' lawsuit was that Albert breached the property settlement agreement by failing to execute an estate plan consistent with its terms. The trial court determined

that because Albert was the party alleged to have breached the property settlement agreement, the claim must be made against his estate. Accordingly, the trial court denied the appellants' motion for partial summary judgment and granted the appellees' motion for summary judgment.

*I.  Should the appellants have brought their claim against Albert's estate?*

The appellants challenge the trial court's denial of their motion for partial summary judgment and the trial court's entry of summary judgment in favor of the appellees by arguing that the trial court erroneously determined that they needed to bring their claim against Albert's estate.

> " ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]' " *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005).

To the extent there is no factual dispute, appellate review of a trial court's order regarding summary judgment is unlimited. *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004). Further, the parties' arguments in this case require this court to look at the Kansas nonclaim statute, K.S.A. 59-2239. This court has unlimited review over the interpretation of a statute. Hence, we are not bound by the trial court's interpretation of the statute. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006).

*Appellants' Cause of Action*

Although the appellants seek a variety of remedies in this case, they are all based on Albert's alleged breach of the property settlement agreement due to his failure to carry out an estate plan in

accordance with paragraph 9 of the agreement. The trial court determined that because Albert is deceased, the appellants' claims must be brought against Albert's estate. The appellants do not challenge that their claims are based on Albert's breach of the property settlement agreement. Rather, the appellants contend that they were not required to assert their claim against Albert's estate but could go after the individual or entity who held the transferred assets.

It is undisputed that the appellants were the intended third-party beneficiaries of paragraph 9 of the property settlement agreement. Thus, as pointed out by the trial court, the appellants have a claim against Albert to the extent that he failed to fulfill his obligations under the contract. See *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 107 P.3d 1219 (2005) (third-party beneficiary can enforce contract if he or she is person who contracting parties intended should receive direct benefit). It is well established that a decedent no longer has the individual capacity to respond in damages to torts, to pay debts, to carry out contracts, or to administer his or her estate, and the estate must meet the decedent's financial obligations. An individual who claims entitlement to all or to a part of a decedent's estate, whether based upon a tort, an oral or written contract, the decedent's will, or the statute of intestate succession, must recover, if at all, from the decedent's estate. *In re Estate of Reynolds*, 266 Kan. 449, 456-57, 970 P.2d 537 (1998); see also *Salvation Army v. Estate of Pryor*, 1 Kan. App. 2d 592, 601, 570 P.2d 1380 (1977) (" '[W]here a party seeks to enforce a contractual obligation to devise or bequeath a portion of a decedent's estate, the proceeding constitutes a demand against the estate and not a will contest.' "). Thus, because Albert had died and could no longer be sued, the appellants' claims based upon Albert's breach of the property settlement agreement should have been brought against Albert's estate.

*Kansas Nonclaim Statute*

In their motion for summary judgment, the appellees contend that the appellants' claims are now barred due to their failure to timely assert their demand against Albert's estate. The appellees

cite K.S.A. 59-2239, the Kansas nonclaim statute. K.S.A. 59-2239 provides a mechanism for a creditor to petition for administration of a decedent's estate when no estate has been opened in Kansas. K.S.A. 59-2239(1) states:

"All demands, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent, including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor or indemnitor, and including the individual demands of executors and administrators, shall be forever barred from payment unless the demand is presented with the later of: (a) four months from the date of first publication of notice under K.S.A. 59-2236, and amendments thereto; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control. *No creditor shall have any claim against or lien upon the property of a decedent other than liens existing at the date of the decedent's death, unless a petition is filed for the probate of the decedent's will pursuant to K.S.A. 59-2220 and amendments thereto or for the administration of the decedent's estate pursuant to K.S.A. 59-2219 and amendments thereto within six months after the death of the decedent and such creditor has exhibited the creditor's demand in the manner and within the time prescribed by this section, except as otherwise provided by this section.*" (Emphasis added.)

K.S.A. 59-2239 is a special statute of limitations governing claims against a decedent's estate. *Union Nat'l Bank & Trust Co. v. Estate of Werning,* 233 Kan. 671, Syl. ¶ 1, 665 P.2d 192 (1983). The nonclaim statute starts to run at the decedent's death or on the publication notice to creditors. K.S.A. 59-2239. The words "all demands" in K.S.A. 59-2239 are all inclusive and include claims and demands of every type and character against a decedent's estate, except in particular cases where a statute expressly provides otherwise. *Werning,* 233 Kan. 671, Syl. ¶ 2. Under K.S.A. 59-2239(2), the statute of limitations is extended for tort claims. There is no similar provision for contract claims.

K.S.A. 59-2239 bars a creditor from having any claim upon property of the estate unless a petition for probate or administration of the estate is filed within 6 months after the decedent's death *and* the creditor's demand is brought forth in the time specified under the statute. As a result, the burden is placed on the creditor to take action to protect its interests within the time prescribed by K.S.A.

59-2239 or the creditor's claim will be barred. No petition was filed for probate or administration of Albert's estate within the 6 months following Albert's death and thus no claim was filed against the estate. Therefore, under K.S.A. 59-2239, the appellants' claims may be barred. Nevertheless, we need to consider whether an exception to the nonclaim statute is applicable to this case.

### Fraud or Unconscionable Conduct

Citing *Pryor*, 1 Kan. App. 2d 592, our Supreme Court in *Reynolds*, 266 Kan. at 456, held: "Nonclaim statutes are considered jurisdictional, and a creditor's noncompliance with the nonclaim statute means that the district court should disallow any claim not filed within the time limit. This rule is inapplicable, however, if the court finds fraud or other unconscionable conduct. [Citation omitted.]" See also *In re Estate of Tracy*, 36 Kan. App. 2d 401, 404, 140 P.3d 1045 (1987) (recognizing that nonclaim statute deprives court of jurisdiction if claim is untimely filed).

Here, the appellants made no allegations of fraud or unconscionable conduct by Doris or any of the other appellees in their pleadings or in the pretrial order. K.S.A. 60-209(b) requires that the circumstances of fraud be pled with particularity. See *Timi v. Prescott State Bank*, 220 Kan. 377, 388, 553 P.2d 315 (1976); see also *Baker v. Brial*, 185 Kan. 322, 341 P.2d 987 (1959) (A charge of fraud, without stating the facts, is insufficient.); *Gleason v. Wilson*, 48 Kan. 500, Syl. ¶ 2, 29 Pac. 698 (1892) (In a petition alleging that a conveyance was fraudulent against the interests of the grantor's creditors, the court held that an allegation alleging fraud in general terms [" 'that a chattel mortgage was not executed in good faith, but for the purpose of hindering, delaying, and defrauding creditors' "] was insufficient. The court further held that facts constituting fraud must be stated specifically.).

Moreover, a pretrial order controls the later course of litigation unless the trial court allows the parties to modify it to prevent manifest injustice. See K.S.A. 60-216(e); *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 18-19, 61 P.3d 68 (2002). When there has been no attempt to modify the pretrial order, it is binding and controls the later course of litigation. *Wenrich v. Em-*

*ployers Mut. Ins. Co.*, 35 Kan. App. 2d 582, 590-91, 132 P.3d 970 (2006). Further, "[a]n issue or claim for relief that is not contained in the pretrial order should not be entertained by the trial court. [Citation omitted.]" *McCain Foods*, 275 Kan. at 19.

Although the record fails to show that the appellants raised and preserved the issues of fraud or unconscionable conduct in either their pleadings or the pretrial order, the appellants, before the trial court, contended that they did not need to show any wrongdoing by Doris. On the other hand, the appellants argued that if the court determined that Doris' knowledge of the property settlement agreement was relevant, "the more credible evidence is that Doris was undoubtedly aware of the [property settlement] agreement and its terms." The appellants pointed to the fact that Doris had signed an antenuptial agreement prepared by the same lawyers who had represented Albert in his divorce from Margaret and that the antenuptial agreement had a provision indicating that Albert and Doris had disclosed the nature and extent of the assets and property that they each owned.

Nevertheless, these facts show only that Doris was aware of Albert's assets and property. The appellants have pointed to nothing in the record that would show Doris or any of the other appellees were aware of the property settlement agreement and were involved in Albert's alleged breach of the terms of such agreement. " 'Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.' " *Forsythe v. Bd. of Educ., Dist. 489*, 956 F. Supp. 927, 930 (D. Kan. 1997). Hence, the appellants have not set forth any facts showing fraud or unconscionable conduct by Doris or any of the other appellees involving Albert's transfer of assets. As a result, the previously stated exception to the nonclaim statute is inapplicable to this case.

*Constructive Trust*

Nevertheless, arguing that a constructive trust can be imposed on property improperly given to a third party when a father has failed to fulfill an obligation imposed by a property settlement agreement arising from a divorce, the appellants cite *Hile v.*

*DeVries*, 17 Kan. App. 2d 373, 836 P.2d 1219 (1992). In *Hile*, the father had agreed under a property settlement agreement to continue his two children as beneficiaries on at least $50,000 of life insurance. Nevertheless, after the father remarried, he named the stepmother as the beneficiary on his life insurance. When the father died, the stepmother received the entire life insurance proceeds. The children's mother sued the stepmother. The trial court imposed a constructive trust on $50,000 of the life insurance proceeds. On appeal, this court rejected the stepmother's argument that a constructive trust could not be imposed absent fraud. This court distinguished *Clester v. Clester*, 90 Kan. 638, 135 Pac. 996 (1913), the case cited by the stepmother, because it did not involve insurance proceeds. This court cited *Tivis v. Hulsey*, 148 Kan. 892, 895, 84 P.2d 862 (1938), for the holding that when a party claims an interest in insurance proceeds, those proceeds are held in constructive trust for the rightful claimant. This court determined that the trial court did not err in using its equitable powers to enforce the father's agreement to maintain $50,000 in life insurance for the benefit of his daughters. 17 Kan. app. 2d at 376.

There was no argument made by the appellant in *Hile* that the claim was barred by the nonclaim statute, K.S.A. 59-2239. Moreover, *Hile* involved a party claiming an interest in insurance proceeds, and such cases have not required a showing of fraud before the imposition of a constructive trust. *Hile* was limited to insurance proceeds. See *Tivis*, 148 Kan. 892. The appellants cite no cases, other than those involving insurance proceeds, where either our Supreme Court or this court have imposed a constructive trust absent a showing of fraud.

A review of Kansas case law reveals that our Supreme Court and this court have consistently held that fraud must be proven before a constructive trust will be imposed, unless, as previously mentioned, a party is claiming an interest in insurance proceeds. See *Garrett v. Read*, 278 Kan. 662, 673-74, 102 P.3d 436 (2004); *Woods v. Duval*, 151 Kan. 472, 99 P.2d 804 (1940); *Cousatte v. Lucas*, 35 Kan. App. 2d 858, 868-69, 136 P.3d 484 (2006). Fraud can be either actual or constructive. In order to establish constructive fraud, a party must show the existence of a confidential relationship

and a betrayal of that confidence, or a breach of duty imposed by that relationship. See *Garrett*, 278 Kan. at 674; *Cousatte*, 35 Kan. App. 2d at 871. Moreover, a confidential relationship is not presumed, and the burden of proving such a relationship existed rests upon the party asserting its existence. *Kampschroeder v. Kampschroeder*, 20 Kan. App. 2d 361, 365, 887 P.2d 1152, *rev. denied* 257 Kan. 1092 (1995).

Finally, this court has defined a confidential relationship " ' "as any relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party." ' [Citation omitted.]" *Heck v. Archer*, 23 Kan. App. 2d 57, 63, 927 P.2d 495 (1996). The mere relationship between a parent and a child does not raise a presumption of a confidential and fiduciary relationship. *Curtis v. Freden*, 224 Kan. 646, 651, 585 P.2d 993 (1978). "For purposes of imposing a constructive trust, a confidential relationship can be based on an agreement between the owner of property and another who will distribute the owner's property in a specified manner upon the owner's death." *Heck*, 23 Kan. App. 2d at 67.

As pointed out earlier, the appellants have failed to set forth any facts showing fraud, either actual or constructive, on the part of Doris or any of the other appellees. Rather, the appellants focus on Albert's conduct of placing assets beyond the reach of his children and argue that it "had all the earmarks of actual fraud." Moreover, in arguing that there was constructive fraud, the appellants maintain that the property settlement agreement gave rise to a confidential relationship between Albert and his children and also to fiduciary duties that Albert owed to his children. Nevertheless, all of these arguments relate to Albert's conduct and not to any conduct by the appellees. Although a confidential relationship may have been created between Albert and Margaret based on the property settlement agreement, the appellees were not parties to the agreement. Moreover, the appellants do not allege that there was a later agreement between Albert or Margaret and the appellees or between Albert and Margaret and the appellees for the appellees to distribute Albert's property according to the property

settlement agreement upon Albert's death. Because no confidential relationship was created between Albert or Margaret and the appellees or between both Albert and Margaret and the appellees, the appellees could not have breached a confidential relationship. See *Staab v. Staab*, 158 Kan. 69, 73, 145 P.2d 447 (1944) (confidential relationship found because father [grantor] was uneducated, had placed the utmost confidence in his two sons, and had followed their advice in all matters of business).

Moreover, as stated earlier, the appellants never pleaded fraud, either in general or specific terms, in their petition, nor did they allege fraud in the pretrial order. Consequently, the previously mentioned arguments of appellants do not establish a constructive trust claim against the appellees.

### *Kampschroeder v. Kampschroeder*

The appellants attempt to fit this case within *Kampschroeder*, 20 Kan. App. 2d 361. In *Kampschroeder*, the son sued to impose a constructive trust on property jointly held by his stepmother and stepsister after his father died. Before the father's death, the father and the stepmother had agreed to hold most of their property in joint tenancy. Their intention was that upon one spouse's death, the other spouse would receive the income from the property and then the property would go to each spouse's respective children. Thus, the father's property would go to the son after both the father and stepmother died. After the father died, however, the stepmother placed most of the couple's assets in her name and her daughter's name. The trial court imposed a constructive trust on certain assets that should pass to the son upon the stepmother's death. This court upheld the trial court's decision on appeal. 20 Kan. App. 2d at 369.

This case is different from *Kampschroeder* because the stepmother in *Kampschroeder* was the one who had breached the agreement to leave property to the son. The stepmother was alive and could be sued for her actions. In contrast, Albert is the one alleged to have breached the property settlement agreement here. Neither the stepmother (Doris) nor any of the other appellees in this case were ever a party to the property settlement agreement.

Because the appellants are alleging that Albert breached the terms of the property settlement agreement, they needed to bring their claim against him or against his estate once he was deceased.

*Pryor Exception to Nonclaim Statute*

The appellants also maintain that they fall within the exception to the nonclaim statute outlined by this court in *Pryor*, 1 Kan. App. 2d 592.

In *Salvation Army v. Estate of Pryor*, 1 Kan. App. 2d 592, 593, 570 P.2d 1380 (1977), John and Gussie McClure, husband and wife, executed a joint, mutual, and contractual will in which each gave the other all personal property and a life estate in all real property, with the power to sell such real property in the event that such action seemed advisable and to use the proceeds, if necessary, for support, maintenance, and comfort. Upon the survivor's death, the remaining real and personal property was to be sold and divided equally between several institutions, including the Salvation Army. After John died, Gussie executed a new will, leaving $5,000 to her brother and the remainder to her sister, Agnes Pryor. The brother predeceased Gussie, and upon Gussie's death, Agnes inherited the entire estate. Agnes died testate 18 months later, and her will was duly probated. The Salvation Army timely filed a claim in Agnes' estate in an effort to recover the money due to it as a result of Gussie's breach of the joint, mutual, and contractual will and for money rightfully belonging to it as remainderman of a life estate of real property held by Gussie. The trial court determined that the contractual provision of the joint and mutual will should be enforced and imposed a trust for $12,143.55.

On appeal, this court in *Pryor* held that the Salvation Army's demand should have been filed in Gussie's estate. This court further held that without clear and convincing proof of a breach of fiduciary duty, actual or constructive fraud, or some other form of unconscionable conduct, the Salvation Army's claim, to the extent it attempted to recover money due the Salvation Army based on Gussie's breach of the joint, mutual, and contractual will, was barred by K.S.A. 59-2239. 1 Kan. App. 2d 592, Syl. ¶ 7.

Nevertheless, this court held that the Salvation Army's claim was not barred in its attempts to recover the remainder of a life estate. 1 Kan. App. 2d at 606. Gussie had exercised her authority under the will to sell some real property. Nevertheless, as a life tenant, Gussie was required to keep the proceeds in trust for the benefit of the remainderman subject to her right to receive the income from the corpus and to invade the corpus if necessary for her support, maintenance, and comfort. This court relied on *Kline v. Orebaugh*, 214 Kan. 207, 519 P.2d 691 (1974), where our Supreme Court adopted Restatement (Second) Trusts § 289, which states: " 'If the trustee in breach of trust transfers trust property and no value is given for the transfer, the transferee does not hold the property free of the trust, although he had no notice of the trust.' " 1 Kan. App. 2d at 605. This court discussed two theories that would allow the Salvation Army to recover against the estate of Agnes for any funds remaining from the sale of the real property. The first was that Agnes took the place of Gussie and effectively became the quasi-trustee with the same fiduciary duty to the remaindermen as Gussie had. The second was that Agnes' estate would be unjustly enriched at the expense of the remaindermen as a result of the violation of Gussie's duty to the remaindermen. This court concluded that when the remainderman is able to prove the existence of trust funds and to follow and identify those funds, a constructive trust will be imposed on the funds. 1 Kan. App. 2d at 606.

This case is different from *Pryor* because in this case there was no specific property identified in the property settlement agreement which was to be held in trust for the appellants and from which the proceeds of its sale could be traced. According to the terms of the property settlement agreement, Albert was not required to hold any property in trust for the benefit of his children. The agreement required only that Albert establish a testamentary trust funded by his entire estate. The agreement, however, fails to state what property, if any, was Albert's estate to be composed of. Because there was no specific property that Albert had contracted to leave to his children, the exception recognized in *Pryor* is not applicable here.

Moreover, the exception to the nonclaim statute outlined in *Pryor* has not been recognized in later decisions by our Supreme Court and this court. See *In re Estate of Reynolds*, 266 Kan. 449, 970 P.2d 537 (1998); *In re Estate of Watson*, 21 Kan. App. 2d 133, 896 P.2d 401 (1995). In *Reynolds*, Justice Abbott, writing for our Supreme Court, set forth the rule from *Pryor* as follows:

"Nonclaim statutes are considered jurisdictional, and a creditor's noncompliance with the nonclaim statute means that the district court should disallow any claim not filed within the time limit. This rule is inapplicable, however, if the court finds fraud or other unconscionable conduct." 266 Kan. at 456.

Although Justice Abbott also wrote the decision in *Pryor* when he sat with this court, no mention is made in *Reynolds* of the exception outlined in *Pryor*. Rather, the strong language quoted earlier from *Reynolds* indicates that the nonclaim statute bars a creditor's claim unless the claim is filed within the time limit under the statute or unless the creditor is able to show fraud or other unconscionable conduct.

Our research has revealed that the nonclaim statute has been consistently sustained on two grounds: (1) that the nonclaim statute is a statute of limitations, which places the burden on the creditor to protect its interests; and (2) that there is a duty on the creditor to keep track of both the debtor and the creditor's own property interests. See *Sprague v. Copenbarger*, 222 Kan. 265, 266, 564 P.2d 486 (1977) (failure to follow mandate of nonclaim statute bars all demands against decedent's estate); *Pryor*, 1 Kan. App. 2d at 598, 605 (duty to protect interests rightly falls on those who would make claim against decedent's estate). Although the appellants have attempted to declare a precise exception to the nonclaim statute, this case is not within that exception. The appellants have not alleged nor have they set forth facts that would show fraud or unconscionable conduct by Doris or any of the appellees that would allow them to avoid the time limits of K.S.A. 59-2239 and sue the appellees directly.

The appellants invite us to circumvent the absolute bar of the nonclaim statute. Nevertheless, our nonclaim statute has been in effect for many years. The purpose of this statute is to help facilitate

the orderly and speedy administration of probate estates. See *In re Estate of Tracy*, 36 Kan. App. 2d 401, 405, 140 P.3d 1045 (2006) (recognizing that primary purpose of K.S.A. 59-2239 is speedy settlement of estates in interest of creditors, heirs, legatees, and devisees and to settle titles to real estate). Our courts have held the nonclaim statute to be an absolute bar to all demands against a decedent's estate that are untimely filed. Following precedent, we decline to disturb the way we have applied the nonclaim statute.

*Statute of Limitations in Contract Action*

It is worth noting that the appellees argue that the appellants' claim is also barred by the 5-year statute of limitations under K.S.A. 60-511(1) relating to contract actions. Significantly, in responding to the appellees' motion for summary judgment, it appears that the appellants failed to provide any argument as to why the 5-year statute of limitations under K.S.A. 60-511(1) would not apply to this case. Instead, the appellants set forth the 2-year statute of limitations for a constructive trust and the applicable rules. Nevertheless, as discussed previously, the appellants have not set forth any facts that would establish a constructive trust claim against the appellees.

It appears that the appellees' statute of limitations argument may have some merit. Assuming for the sake of argument that the nonclaim statute does not bar the appellants' claims, the appellants' claims may still be barred by the statute of limitations on the underlying claims. Here, the appellants' claims are based under a written contract between the decedent and his former wife. As the appellees correctly point out, the appellants would have had 5 years in which to bring the action. See K.S.A. 60-511(1). The appellees further note that a cause of action for breach of contract accrues when the contract is breached, not when the breach or harm is discovered. *Crab v. Swindler, Administratrix*, 184 Kan. 501, 507, 337 P.2d 986 (1959) (Where a contractual relationship exists between the parties, the cause of action accrues when the contract or agreement is breached, irrespective of knowledge on the part of the plaintiff of the breach or any actual injury.); *Voth v. Chrysler Motor Corporation*, 218 Kan. 644, 651, 545 P.2d 371 (1976); *Wolf*

*v. Brungardt*, 215 Kan. 272, 279, 524 P.2d 726 (1974); *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42, *modified on other grounds* 247 Kan. 699, 803 P.2d 205 (1990); *Freeto Construction Co. v. American Hoist & Derrick Co.*, 203 Kan. 741, 746, 457 P.2d 1 (1969); *Ware v. Christenberry*, 7 Kan. App. 2d 1, 4, 637 P.2d 452 (1981).

The majority of Albert's conveyances, transfers of property, and changes of beneficiary designation occurred more than 5 years before the appellants filed their action on April 12, 2005. For instance, the appellees point out that in May 1987, Albert conveyed the real estate on which Globe operated to Doris for "one dollar and love and affection." The warranty deed evidencing the conveyance was filed of record with the Sedgwick County Register of Deeds on May 11, 1987. It would seem that Albert committed a wrong or breach of the property settlement agreement when he conveyed, during his lifetime, the Sedgwick County real estate without reservation to Doris. Although the appellants may argue that the statute did not commence to run with respect to Albert's alleged breach until his death, as the appellees point out, this argument runs counter to *Engelbrecht v. Herrington*, 101 Kan. 720, 172 Pac. 715 (1917).

*Elgelbrecht* involved an action against an executor seeking to recover the value of land the decedent-father had orally promised to devise to the plaintiff-son, if the son would help work the land and pay the mortgage debt. Before he died, the decedent conveyed the land to a third party for allegedly inadequate consideration. The son argued that his father had breached their agreement, and the executor defended on the basis of the 3-year statute of limitations applicable to oral contract claims. Our Supreme Court affirmed the trial court's dismissal of the action and rejected the argument that the cause of action did not accrue until the father's death. The court held that the cause of action accrued when the conveyance was made and further explained:

"In this case . . . his father absolutely disabled himself from performing his part of the contract in June, 1909, by the conveyance of the land to another. Thereafter, it was beyond the power of the father to leave or will one-half of the land to the plaintiff. The contract being fully executed on the part of plaintiff and perform-

ance on the part of his father being a legal impossibility, the contract was at an end and the rights of plaintiff then fully accrued." 101 Kan. at 724.

Here, long before Albert died, he absolutely and irrevocably conveyed his interest in the Sedgwick County real estate to Doris by warranty deed. The deed was recorded in 1987, and no action was filed until April 2005. In deeding the property, Albert rendered legally impossible his alleged obligation to keep the property for the benefit of the appellants. The alleged breach was complete, and any cause of action for breach of contract then accrued.

Neither Margaret nor the appellants attempted to enforce their rights under the contract and bring a claim against Albert for his alleged breach of the property settlement agreement. It is apparent that the appellants' attempt to enforce their rights under the property settlement agreement as it relates to Albert's conduct before April 2000 is untimely. We, however, need not further address this issue based on our previous holding.

Affirmed.